Cox *v.* Hartford Fire Ins. Co. *et al.*

(Division A. April 15, 1935. Suggestion of Error Overruled May 27, 1935).

[160 So. 741. No. 31659.]

M. S. McNeil, of Hazlehurst, and J. Morgan Stevens and J. M. Stevens, Jr., both of Jackson, for appellant.

W. S. Henley, of Hazlehurst, for appellee.

Argued orally by **J. Morgan Stevens** and **J. M. Stevens, Jr.,** for appellant, and by **W. S. Henley,** for appellee.

**McGowen, J.,** delivered the opinion of the court.

The Hartford Fire Insurance Company filed a bill of interpleader in the chancery court of Copiah county, paid into court seven hundred fifty dollars, the proceeds of a policy on a certain house which had been destroyed by fire, alleged that it had no interest in the contest between the claimants, and had O. A. Cox and J. W. Heap, receiver, summoned into court as defendants. Answers were filed by both defendants making claim to the fund. A trial was had and a decree of the court was entered in favor of J. W. Heap, receiver, and Cox appeals here.

In 1924 Cox became indebted to the People's Bank of Crystal Springs, Mississippi, in the sum of about one thousand two hundred dollars, and to secure the

loan he executed a deed of trust in favor of the bank upon a described one hundred twenty acres of land owned by him, on which there were some houses. This note and deed of trust was renewed annually until 1930. Prior to 1929 Cox had carried insurance on the insurable houses located on the land with loss payable clause in favor of the bank. In 1929 he procured from the agent at Crystal Springs a five-year term farm policy of insurance not only on the houses described in the bank's deed of trust, but also on a house described as No. 1, located on eighty acres of land owned by him, and on which land the bank had no claim or deed of trust. The house on this eighty acres of land was destroyed by fire in 1934, while the policy was in force.

The policy contained a loss payable clause in the following language: "It is agreed that any loss or damage on buildings only that may be ascertained and proven to be due the assured under this policy shall be held payable to the People's Bank, Crystal Springs, Mississippi, as its interest may appear, subject, nevertheless, to all conditions of the policy."

The answer of the insured, Cox, alleged, in substance, that he applied to Lotterhos for insurance on the dwellings on both pieces of property, and advised said agent that the bank held a mortgage on the one hundred twenty acres of land, but did not have any claim on the eighty acres of land, and alleged "that by inadvertence or mistake the agent of said insurance company wrote said loss payable clause so as to cover all of the buildings on both of said pieces of property payable to the People's Bank of Crystal Springs, as its interest might appear." Cox charges that it was never agreed between himself and the agent of said company, and there never was any agreement or understanding between himself and the People's Bank of Crystal Springs to make the loss payable clause on the dwelling situated on the eighty acres

of land payable to said bank; that the said People's Bank never at any time owned any interest in said eighty acres of land; never held a lien against the same of any description, but as charged aforesaid, the agent in preparing said policy made the error, ''which he now preacknowledges.''

The answer of Heap, who became the receiver of the bank in liquidation about two or three years before this litigation arose, denied in effect the above allegations. That was the only issue of fact submitted to the court for decision.

The only evidence was that of Cox, the insured, and McCluney, the president, officer and agent of the bank, who made the contract with Cox for the renewal of the loan and for the security therefor. Their evidence is not in dispute; they fully agree that neither the mortgagor nor the mortgagee intended to secure any insurance, so far as the bank was concerned, on any property except that which was insurable and located on the land on which the bank had a deed of trust. The insurance company had admitted its liability for the loss and paid the amount thereof into court and was discharged. Cox testified that he received the policy from the agent, took it for granted that it had been written as requested and never examined it until the loss occurred. McCluney, the president of the bank, did examine the policy, was satisfied with it, and thought that it only protected the bank's interest as to the property insurable located on the land on which it had a deed of trust.

The opinion of the chancellor indicates that the proposition seriously argued in the lower court was that the language of the loss payable clause above set forth should be construed to mean that the bank's interest was only that shown by its deed of trust, and, under the language— ''as its interest may appear''—could not be extended to include property not embraced in the deed. The lower

court's construction of this clause in the fire insurance policy is aptly stated in the case of Sun Insurance Office v. J. M. Scott, 284 U. S. 177, 52 S. Ct. 72, 73, 76 L. Ed. 229, in the following language: "The loss payable clause above quoted is not informative to the insurer of the existence of a chattel mortgage, but performs the office of protecting a creditor of the insured who has no interest in the insured property by mortgage or otherwise against the eventuality of fire loss."

In the case of Colby v. Parkersburg Ins. Co., 37 W. Va. 789, 17 S. E. 303, the court held that where a policy of fire insurance insures A in a given sum, part of it on one property, part on another, loss payable to B "mortgagee, as his interest may appear;" B's mortgage covers only one of the properties insured; B may sue on the policy in his own name, and recover total loss on both properties, not exceeding his debt, notwithstanding his mortgage covers only one of the properties insured. The court also held that the words "as his interest may appear" do not refer to the mortgagee's interest in the property but to the amount of his mortgage debt; if, at the loss, his debt had been paid, he would have had no interest; if still unpaid, he would get all the compensation for all the loss, not exceeding, however, his debt. In the case at bar the word "mortgagee" does not appear after the name of the bank, and we are not here compelled to approve in full that opinion until a case shall arise in which the word "mortgagee" follows the name of the individual with the accompanying language "as his interest may appear."

We have reached the conclusion that the proper construction of the clause here under consideration is that by the language thereof the insured assigned to his named creditor, the bank, all the insurance therein contracted for as its interest may appear, which included its debt without regard to the fact that it had partial security by

a deed of trust on other land, but we are of opinion that the language of the pleading filed by Cox in this case alleged a mutual mistake on the part of the insurance agent, himself, and the bank, although he did not, by his pleading, seek affirmative relief by asking that the contract of insurance be reformed. Such a proceeding would have been entirely unnecessary; the insurance company was not affected or interested in the distribution by the court of the proceeds of this insurance policy, and the court was authorized to, and in our judgment should have, under the facts of this case, treated the insurance policy as though it had been reformed to conform to the agreement and contract of the parties. They did not contract that the insurance on a house other than those located on the land included in the deed of trust should be security for the debt. The issue was made, and the proof wholly sustained the allegation of the answer filed by Cox, and while a decree of reformation is always in the discretion of the court, that discretion must be exercised in a sound judicial manner and here there is no controversy. The minds of the parties to this litigation, Cox and the bank, never met on this contract as written for them by the agent of the insurance company. Neither party discovered the mistake until the loss occurred. The bank, through a receiver, undertakes to claim the money on the contract as written, without regard to the intention of the parties. The intention here was mutual—not to include insurance on the house on land owned by the insured in which the bank had no interest.

"Where circumstances justify reformation of a writing, affecting the contractual relations of the parties to the writing, a court may in its discretion without a preliminary decree of reformation give effect to the transaction as if it had been reformed. This also is permissible where the transaction is oral if this is the only reason precluding a decree for reformation." Section 507, A. L. I. Restatement, Contracts.

The parties to the contract and interested therein, Cox and the bank, never discovered that the insurance contract had been written to include security on a house which neither of them intended should be given. Cox could have canceled the policy on his house at any moment before the loss, or could have had the insurance company make the correction had he discovered the mistake, because the parties never intended that the bank should have an insurable interest in the house here involved. We are therefore of the opinion that the intention of the parties so clearly demonstrated should have been carried out by the court, without the useless procedure of reforming an instrument in which only the parties here before the court were interested. The insurance company no longer had any interest therein.

The negligent failure of a party to know or discover the facts, as to which both parties are under a mistake, does not preclude rescission or reformation on account thereof. Section 508, A. L. I. Restatement, Contracts. In the case at bar the negligence of Cox was not a breach of any positive duty, and the bank has not been prejudiced thereby. The evidence shows that at the time the security was taken it was more than ample, and the bank was perfectly content therewith. It now appears, because of the depression, that it would be advantageous to the bank to apply the proceeds of this insurance policy to the debt. The rule quoted from the restatement seems to be in accord with the weight of authority in this country. Under such circumstances we do not think Cox was estopped from having the contract enforced according to the undisputed, uncontradicted intention of the parties. The same principle has been applied by this court in U. S. F. & G. Co. v. Parsons, 147 Miss. 335, 112 So. 469, 53 A. L. R. 88, and the same case in 154 Miss. 587, 122 So. 544.

Appellee undertakes to invoke the maxim that "he who seeks equity must do equity," and therefore the bank,

through its receiver, would be entitled to recover this money. Cox and the bank are not here as actors in an original proceeding asking affirmative relief. The language of the loss payable clause prima facie puts the burden of proof upon Cox, but he did not institute any suit or seek any affirmative relief, and as we understand the rule the maxim is only in cases where the party is an actor in a court of equity to obtain some equitable relief. See Pomeroy's Equity Jurisprudence (4 Ed.), sec. 386. In Burton v. John Hancock Mutual Life Ins. Co. (Miss.), 158 So. 474, it was said that the maxim does not apply to a defendant seeking no affirmative relief. Cox filed no cross-bill in this case. The bank seeks an enforcement of a mistake as to property, which was never included in the contract between it and Cox. In other words, if permitted to recover, the bank would unjustly be permitted to take something for which it had never contracted, and to which it has no right in equity. The bank never had an equitable right to the proceeds of this insurance policy. The right to the proceeds of the insurance policy on his house grows out of, as we see it, an entirely separate and distinct right of Cox from that of the bank by reason of its debt.

We are of the opinion that Cox is entitled to recover the proceeds of his insurance policy here, seven hundred fifty dollars, and to that end the cause will be reversed, and a decree will be entered here.

Reversed, and decree here for appellant.