HOME INS. CO. et al. v.
McCLARAN et al.

No. 31933. April 2, 1946.

Rehearing Denied April 30, 1946.

*168 P. 2d 306.*

Doerner, Rinehart & Stuart and Jack Langford, all of Tulsa, for plaintiffs in error.

C. B. Holtzendorff and P. W. Holtzendorff, both of Claremore, for defendants in error.

WELCH, J. McClaran as plaintiff sued to recover on breach of the terms of a real estate conditional sales contract as against Mrs. C. E. Leak, and to recover on three certain fire insurance contracts as against the insurance companies who are plaintiffs in error.

Mrs. Leak was the owner of the real property by virtue of assignment to her of a conditional sales contract previously entered into by plaintiff as seller, and other persons. The insurance companies had written policies of insurance on the buildings situated on the land, and plaintiff had been named in the policies as the beneficiary under standard mortgage clauses. The buildings had been previously destroyed by fire.

The insurance companies complain of the judgment in the following particulars:

"The Standard Mortgage Clause cannot be reformed under the evidence so as to make the loss payable to H. A. McClaran instead of Emma McClaran."

The name of Emma McClaran was used in the mortgage clauses instead of H. A. McClaran. Plaintiff sought and obtained reformation of the clauses in that respect. In that connection plaintiff's evidence is that Mr. Viles, the agent of the insurance companies, obtained information that Mrs. Leak desired the buildings insured and the agent went out to the property to solicit the insurance. He and Mrs. Leak inspected the buildings in considerable detail and it was agreed that she would purchase insurance thereon in the total amount of $1,000, after which the question arose as to the beneficiaries.

In that discussion Mrs. Leak disclosed that she owed something on the property, but that she did not know the name of the person holding the indebtedness, but she advised that such information could be obtained from a certain bank in Claremore, or from Mr. McSpadden at such bank. She told Viles that such person was a Mr. McClaran, but she did not know his initials. Mr. Viles stated to her that the one who held the mortgage, whatever his name was, would be named in a mortgage clause to be attached to the policies. Viles telephoned Mr. McSpadden at the bank and was informed by him that a contract for the sale of the property was in escrow at the bank, and through mistake told Viles that Emma McClaran was the vendor. Mr. Viles testified that he meant to find out who the mortgage was and put that name in the mortgage clause.

The policies were retained in the office of the agent, Mr. Viles, and were not seen by either plaintiff or Mrs. Leak.

The insurance companies herein insist that a reformation of the mortgage clauses by substituting the name of H. A. McClaran instead of the name of his daughter, Emma McClaran, who had acted as the father's agent in some dealings with the bank, results in compelling the insurance companies to insure

a person unknown to the parties and not agreed upon as the insured, and would compel the performance of a contract they never made. We think from the evidence there can be no doubt that the parties both intended to insure the holder of the debt. The identity of the holder and possibly the form of the debt were the only unknown factors. Mrs. Leak gave Mr. Viles all the information she then had in connection with the matter, and there is no suggestion of fraud or deceit on her part. She told Mr. Viles where he could get all the information in regard to the matter. There is nothing in this record to suggest that the bank or Mr. McSpadden was her agent for whom she stood wholly responsible, and no authorities are given us to that effect. True, the insurance companies might have been justified in refusing to write the policies had they known that H. A. McClaran was one of the insured, and they might have desired to do so. But it would seem here that the agent assumed to obtain further information than Mrs. Leak was able to furnish, and we have no doubt that his obligation in that respect was at least equally as great as that of Mrs. Leak. He relied upon the information he assumed the burden of obtaining from the escrow holder, and in the absence of fraud or collusion his principals are bound thereby.

Plaintiffs in error further complain as follows:

"Plaintiff proved himself a vendor in a contract for sale and not a mortgage, so cannot recover on the contract insuring only a mortgagee."

In argument thereunder it is asserted that plaintiff did not seek reformation of the insurance contract to cover a vendor in a contract of sale which his proof showed him to be. In American Ins. Co. v. Jueschke, 110 Okla. 250, 237 P. 585, it was held in the third paragraph of the syllabus as follows:

"Where the proof shows conclusively that there was a mutual mistake of fact, in that the owner of an equitable interest in an automobile was designated as the assured instead of the plaintiff, the owner of the legal title, who made application for insurance to protect his interest in the car, the plaintiff was entitled to have the policy reformed to express the real intention of the parties, and, under such circumstances, the court will deem such policy to have been reformed in an action by the plaintiff to recover on the policy."

The same rule is applicable here.

There is competent evidence to the effect that Mr. Viles, the insurance agent, was informed by Mr. McSpadden that plaintiff's interest in the insured property was represented by the contract of sale. Mr. McSpadden testified as follows:

"Q. Didn't you tell him that the mortgagee was Emma McClaran, and didn't you so tell him when he talked to you over there? A. I don't recall anything —whether I said mortgagee, but I am sure that he claimed it was a contract for deed in escrow. Q. You are sure you did understand that. You are sure you explained that? I am questioning you, Mr. McSpadden. You told him — you said it was a mortgage, and I want you to be positive about that explanation— it was a contract for a deed in your own mind? A. I told Mr. Viles it was a contract for a deed and in escrow at the bank."

The agent having thus been informed, the defendants cannot now be heard to complain in that respect, and our conclusion in that regard is equally applicable to defendants' contention that "no meeting of the minds occurred so that no agreement for standard mortgage clause was ever made."

The agent assumed the task of preparing the policy to afford protection for Mrs. Leak and the holder of the indebtedness against the property. He attached the standard mortgage clause and his principals are thereby bound to plaintiff in the absence of fraud or concealment on the part of the beneficiaries. Thereby an independent contract became established between the insurance companies and the plaintiff. Western Assurance Co. v. Hughes, 179 Okla. 254, 66 P. 2d 1056, and National Fire Ins. Co. v. Dallas Joint Stock Land Bank, 174 Okla. 596, 50 P. 2d 326.

Defendants next contend:

"Proof of loss was required and none was made, and no waiver thereof is shown."

The loss occurred in March, 1942, the insured building being totally destroyed by fire. Plaintiff knew nothing of the loss until August or September, 1942. Mrs. Leak had the matter up for consideration with the agent of the companies and the adjuster for the companies several times. Some time after learning of the loss plaintiff placed the matter in the hands of his attorneys, and in October, 1942, his attorneys and Mr. Viles and Mr. Baggs, an adjuster, had a conference in an effort to adjust plaintiff's claim against the insurance companies.

In such conference it appears that the representatives of the insurance companies contended that the mortgage clause was never issued on conditional sales, or a purchase contract, and that the wrong name was inserted in the mortgage clause. And it further appears that no mention was made of a proof of loss and no request was made therefor or for any further information regarding the loss or the extent thereof. Though defendant's representative as a witness was careful to say that he neither accepted nor denied liability, the plaintiff was generally informed by the conference that the differences relating to the mortgage clause matters were the only objections being made, and were the cause of withholding settlement with plaintiff.

Mr. Baggs testified that he represented all of the insurance companies in investigating the loss, and that he made several trips to Claremore investigating the loss, and then contacted Mrs. Leak at Pryor, and that he never suggested or demanded proof of loss of anyone, although he and Mr. Viles had several conferences with Mrs. Leak concerning the matter.

Though the adjuster insists that he neither admitted nor denied liability, we think that position may be subject to some doubt. However, we do not base our conclusion on the point on that ground. We think there can be no doubt that under the circumstances here shown this plaintiff was led to believe that the filing of a formal proof of loss would not in any way affect or aid him in settling the obvious differences between him and the insurance companies. We think any reasonable person would assume that the companies did not need or desire further proof of the loss, and that the rule is applicable which this court announced in Aetna Ins. Co. v. Jackson, 177 Okla. 345, 60 P. 2d 210, as follows:

"Where an insurance company receives actual notice of a loss of a motorcar by fire and the agents and adjusters of such company promptly make a complete investigation, reporting such facts to the company, and act in such a manner as would lead a reasonable person to believe no further proof necessary, the said company thereby will be held to have waived the written verified notice required to be filed in 60 days under the conditions of the policy."

It is further contended:

"The plaintiffs in error are entitled to be subrogated, and it was the mandatory duty of the trial court to determine the right."

In that connection we observe that the judgment of the court is to the effect that plaintiff have judgment against Mrs. Leak for $1,164.15, the full amount of the balance due on the contract of sale, and that the property be sold in satisfaction thereof. Plaintiff was also given judgment against the three insurance companies in the total sum of $1,068.62. The judgment further provided:

"It is further ordered, adjudged and decreed that the court declines to pass upon the question of whether or not the defendant insurance companies, respectively, are entitled to be subrogated as between themselves and the plaintiff to whatever rights, title, or interest plaintiff may possess against the defendant, Mrs. C. E. Leak, although requested so to do by the respective insurance company defendants in open

court, at the time of judgment; to which order of the court the said defendants, respectively, except, and the same is allowed."

The mortgage clause provided:

"Whenever this company shall pay the mortgage (or trustees) *any sum* for loss or damage under this policy, and shall claim that, as to the mortgagor or owner, no liability therefor existed, this company shall, *to the extent of such payment,* be thereupon legally subrogated to call the rights of the party to whom such payment shall be made . . ." (Emphasis ours.)

The defense of the insurance companies was predicated upon a denial of liability to Mrs. Leak as well as to plaintiff. There was much evidence taken at the trial touching the issues of fact which would govern the questions of whether or not the insurance companies were liable to Mrs. Leak. If they were not liable to her under the policies, they were entitled to subrogation. The trial court refused to determine the facts and the issues. No sufficient reason or authorities are given us in the briefs why those material facts are left without the attention of the trial court, and we know of none. In that respect we conclude that the trial court erred.

The insurance companies further urge that plaintiff has breached his contract with them to subrogate them to his rights. We find nothing in the record to show that plaintiff has committed any act which prevents the companies from having subrogation if they are entitled to same.

The judgment, insofar as it allows plaintiff recovery against Mrs. Leak for the amount due under his sales contract and for foreclosure, and judgment against the insurance companies, is affirmed. The same is reversed as to the refusal to determine the facts and issues on the question of subrogation, and the cause is remanded for determination thereof.

GIBSON, C. J., HURST, V. C. J., and OSBORN, BAYLESS, DAVISON, and ARNOLD, JJ., concur.