LITITZ MUTUAL INS. CO. *v.* MILLER, et al.

Division A. Jan. 15, 1951.

No. 37750 (50 So. (2d) 221)

Welch, Cooper & Welch, for appellant.

Jack McDill and Deavours & Hilbun, for appellees.

Ethridge, C.

The issues here center around a requested reformation of a fire insurance policy by inserting in it the mortgagee's name in the loss payable clause, and the determination of whether insured's proofs of loss were fraudulently made and thereby voided the policy.

J. J. Miller, one of the appellees, was a carpenter who had had some experience in the construction of homes. In July, 1948, he had almost completed a house on 17th Avenue in the City of Laurel, Mississippi. He also owned a lot on 7th Avenue in Laurel, upon which he

desired to erect a small house, with the idea of selling it after its completion. On July 15th he began construction upon this latter place, and at about that time he applied to the Commercial National Bank and Trust Company of Laurel, the other appellee, hereinafter referred to as the Bank, for a loan to finance the erection of this house.

The Bank agreed to finance it, and Miller, on July 23, 1948, executed a promissory note in the amount of $1,500, representing the first advance by the Bank upon the construction, and also a deed of trust to the Bank as beneficiary, covering the lot upon which the house would be located and the proposed house. It was agreed that additional advances would be made by the Bank to Miller as construction progressed, and the deed of trust provided that it would also serve as collateral for any debts owed the Bank by Miller which might be incurred subsequently by him. In the deed of trust Miller agreed to maintain fire and tornado insurance on all buildings on the property, ''loss, if any, payable to the said Commercial National Bank & Trust Company, of Laurel, or its assigns, as its interest appears . . .'' The deed of trust was filed for record three days after its execution, and then recorded.

D. U. Maddox, President of the Bank, requested Miller, several times after the Bank's agreement with him, to obtain this insurance and to put in it the usual mortgagee loss-payable clause, as provided in the deed of trust. Miller agreed to do so, but postponed doing it. Miller had had previous dealings with the Bank, and in those dealings had borrowed money on other construction projects from the Bank, and in each previous instance it had required fire insurance to take care of its interest on the money it had loaned.

C. T. Walters, a local agent in Laurel for the Lititz Mutual Insurance Company, the appellant, solicited from Miller on at least two occasions the business of writing fire insurance on the house in question. Around the

latter part of August he did so, and Miller advised him that he was not ready for insurance at that time. Walters went back out to the site of construction about a week later, and Miller told him he would come to Walters' office about the insurance the following week. During this second conversation, Walters talked with Miller also about obtaining a loan on the property. Miller told him, according to Walters, that after he finished the house he might want to get a loan on it. Walters testified that he talked to Miller only about financing the house through a lender he represented after the house would be completed; that Miller at no time told him that appellee Bank or any one else was financing the building of the house and had a mortgage on it; and that Miller did not request him to insert in the fire insurance policy a mortgagee clause in favor of the Bank. On the other hand, Miller testified that in his conversation with Walters he told Walters that the Bank had a mortgage on the house and was financing its construction. Miller did not say that he expressly asked Walters to insert in the policy a mortgagee clause payable to the Bank.

On September 7, 1948, Miller went by Walters' office. Walters was out, but his secretary took his order for the insurance and Miller at that time paid the premium. Two or three days later Walters told Miller that the policy was ready for him, so Miller went by Walters' office, picked up the policy, and took it directly to the Bank. Neither Miller nor Maddox, president of the Bank, examined the policy to see if it contained a mortgagee clause. Maddox placed it in his files, where it remained until after the fire. Miller apparently obtained the policy only upon the insistence of Maddox that he get it for the Bank's protection.

The insurance policy, issued by appellant insurance company to Miller on the property in question, on September 7, 1948, insured him against the risks of fire, lightning, and "extended coverage". It was a builder's risk policy, with a maximum "estimated com-

pleted cost'' on the house of $7,500. The amount of coverage would vary according to the ''actual value'' put into the building as it progressed. It also contained the following clause: ''Loss, if any, to be adjusted with the insured and payable to ————, Mortgagee, as interest may appear under present or any future mortgage of the property, and to the insured as Trustee for self and all engaged in the construction and supplying of materials, as their interests may appear.''

On the afternoon of September 15, 1948, the house, which was pretty well advanced in construction, was totally destroyed by a fire of undetermined origin. The next morning the Laurel fire chief told Walters, agent of appellant, of the fire, and at about the same time Miller came by Walters' office and also advised him of it. Miller did not at that time ask Walters for printed forms with which he might make proofs of loss under the policy, and Walters did not furnish them to Miller. Upon inquiry by the Bank, Walters advised it that the policy contained no mortgagee clause. Appellant did not furnish Miller with forms for proofs of loss until more than two months after the fire. In the meantime, Miller had employed an attorney to assist him in making his claim of loss.

After some negotiations between Miller and appellant, the latter refused to pay any claim for the loss from the fire of September 15, 1948, so on April 14, 1949, Miller filed a suit in the Circuit Court of the Second District of Jones County, Mississippi, against appellant insurance company, asking judgment in the amount of $7,500 for the loss under the policy. On motion of defendant, the court ordered that the Bank be made a party to the suit, and the Bank filed a petition of intervention in which it set up that prior to the fire Miller was indebted to the Bank for $6,158.68, that he had agreed to maintain fire insurance on the building with a mortgagee clause payable to the Bank, and that the deed of trust to the Bank was properly recorded. The petition charged that the

local agent for appellant had knowledge of the existence of the Bank's deed of trust, that he was requested to place therein a loss payable clause, that similar instructions had been given by the Bank to Miller, and that the local agent "through inadvertence or oversight" failed to insert such a clause in the policy. The Bank requested that the insurance policy be reformed so as to insert in the mortgagee clause in the policy the name of the Bank in order that such a mutual mistake might be corrected, and requested that for that purpose the case be transferred to the chancery court. This was done, and appellant then filed an answer to the Bank's petition denying that it had any knowledge or notice of the mortgage to the Bank, and denying that either Miller or the Bank had requested defendant to insert a loss payable clause in the policy. It further denied that its local agent in Laurel had any knowledge of the deed of trust, any mutual mistake, that proper proof of loss had been made, and that a reformation should be granted.

A rather lengthy trial of this matter was had at the August, 1949, term. The testimony and the issues were directed toward the issues of whether there was a mutual mistake justifying reformation, and whether there were proper or fraudulent proofs of loss made by Miller.

The chancellor found as a fact that Maddox had instructed Miller to obtain a fire insurance policy with a mortgagee loss-payable clause to the Bank, and that when the policy was obtained Miller was undertaking to carry out the instructions of the Bank. The trial court found that the policy contained a mortgagee clause, but the blank space for the name of the mortgagee had not been filled in, that Walters had knowledge of the existence of the mortgage to the Bank, there was a mutual mistake as between Walters, acting for the insurance company, and Miller, and that the insurance policy should be reformed so as to insert in the mortgagee clause the name of the Bank. The court found that Miller had not

wilfully concealed or misrepresented any material facts in the proofs of loss in a fraudulent manner, and that the building was at least 80 per cent completed. The final decree recited these findings of fact and further held that under such circumstances appellant was obligated to insert the mortgagee clause under Mississippi Code of 1942, Sec. 5695. It found that at the time of the destruction of the house it had an actual value of $6,000. Hence a judgment was given to Miller in that amount, subject to the paramount claim therein of the Bank. The proofs of loss made by Miller claimed an actual value of $6,801.33. Accordingly, the policy was reformed by inserting the Bank's name and the mortgagee clause with the above results. From this decree, appellant assigns several errors which it believes were made by the trial court.

Appellant contends that there was no mutuality of mistake to support reformation of the policy of insurance by making a loss under the policy payable to the Bank, and that hence the trial court erred in granting such reformation. The insured, Miller, did not ask for reformation, that request being confined to the petition of the Bank.

A court of equity may grant reformation "where mutual mistake in the writing of an insurance contract results in the written terms not expressing the clear intent and understanding of the parties . . . This is particularly true where the insured was induced to act upon the superior judgment of an insurance agent, or where the error resulted from the fraud, mistake, or negligence of the agent." 4 Appleman, Insurance Law and Practice, Sec. 2913 (1941). That same text, in Sec. 2912, pages 853, 854, further states the general rule of reformation with reference to a mortgagee clause: "Similarly, if the court found that an insurance policy was intended to be made payable to a mortgagee, but a clause used for that purpose failed to show such intent, the real intention of the parties will be effectuated. Con-

versely, it would be competent to show that where a policy was made payable to a mortgagee there was actually no mortgage in existence or that it had been satisfied. These results are particularly true where the circumstances have been properly explained to the insurer's agent, or where such agent had otherwise acquired full knowledge of the situation. An agent's error would not, therefore, avail the insurer."

This ██ right of reformation by the insertion of a mortgagee clause exists where the agent has knowledge of the existence of the deed of trust, and an intention with the insured to protect the mortgagee. Such knowledge and intention are imputed to his principal, the insurer. The existence of such knowledge and intention by the agent of the insurer, and the consequent duty to insert the mortgagee clause has been found to exist in a number of cases. Mahler v. Milwaukee Mechanics' Ins. Co., 1934, 205 N. C. 692, 172 S. E. 204. In Hartford Fire Ins. Co. v. McCarthy, 1904, 69 Kan. 555, 77 P. 90, there was conflicting evidence as to whether the agent knew of the existence of the mortgage, and the Court affirmed a finding of knowledge and a reformation by insertion of a loss payable clause in a correct form setting out the correct name of the present mortgagee. See also Home Ins. Co. v. McClaran, 1946, 197 Okl. 48, 168 P. (2d) 306; Beddow v. Hicks, 1940, 303 Ill. App. 247, 25 N. E. (2d) 93; Fadden v. Sun Ins. Co., 1933, 124 Neb. 712, 248 N. W. 62; 4 Appleman, supra, Sec. 2914, page 860, note 3; ibid., Sec. 2915, page 869, 871; ibid., Sec. 2915; 45 C. J. S., Insurance, Sec. 692, p. 651, Sec. 563. And this Court has allowed reformation of a fire insurance policy in order to effectuate a correct statement of the name of the owner of the property. Aetna Ins. Co. v. Sims, 1936, 175 Miss. 692, 166 So. 759.

On the issue of mutual mistake there is a flat contradiction between the testimony of Miller and the factual circumstances, and on the other hand the testimony of Walters. The chancellor accepted the former after hav-

ing heard and seen the witnesses, and we cannot say that his finding on this issue was manifestly wrong. In fact several other circumstances than Miller's testimony tend to support that finding. Walters solicited the insurance business from Miller at least on two occasions, and admitted that he discussed financing the home through one of his companies. It would be natural for Miller to advise Walters that the Bank was already financing the construction of the house, in refusing to make any arrangement with Walters concerning the financing. And Miller manifestly was carrying out the instructions of the President of the Bank when he obtained the policy. This is confirmed by his testimony and that of the president of the Bank, and by the fact that, upon obtaining the policy, he immediately went straight to the Bank and delivered it to the president. In obtaining the policy, Walters represented appellant, and Miller represented both himself and the Bank. And the policy issued by the appellant in fact contained a mortgagee loss-payable clause, failing only to contain in a blank space in it the name of the Bank as mortgagee. This is a strong circumstance to indicate Walters' intention to protect the mortgagee. If he had no such intention, he probably would have struck out the mortgagee clause.

▇▇▇ Another reason why the Bank is entitled to the proceeds of this insurance policy lies in the existence here of an equitable lien in its favor. The law will presume that insurance taken out by a mortgagor in his name, after an agreement by him with the mortgagee to insure for the mortgagee's benefit, was taken out to fulfill that agreement. 4 Appleman, Insurance Law and Practice, Sec. 2263. In Swearengen v. Hartford Fire Ins. Co., 1899, 56 S. C. 355, 34 S. E. 449, the mortgagee's equitable lien on the proceeds of the fire insurance policy was denied on the ground of payment by the insurer to another party without notice of the mortgagee's claim. It was not shown that the insurance agent knew of the

mortgage, but, despite this, the Court discussed as a first point in the case whether the mortgagee had such a lien. The mortgagor had agreed, as had Miller here, with the mortgagee to insure the property, but the bill did not allege that the mortgagor obtained the insurance with the intent to perform that agreement. The Court said: "But, further, the law will presume that insurance taken out by the mortgagor in her own name, after an agreement to insure for the mortgagee's benefit, was taken out in pursuance of the agreement, on the ground that equity regards that as done which ought to have been done. While, in Massachusetts (Stearns v. Quincy Mut. Fire Insurance Co., 124 Mass. 61), the principle was announced that no equitable lien would exist in favor of the mortgagee unless the insurance was obtained with intent to perform an agreement to insure, yet we think the better view is that such an equitable lien exists when there is an agreement to insure for the mortgagee's benefit, and subsequent insurance in the mortgagor's name, without necessity to establish as a fact that the insurance was taken with intent to perform the agreement. The law will presume the actual intent to be in accord with the duty."

In 1934 the North Carolina Court in referring to the mortgagee's claim on the proceeds of a fire insurance policy, said: "We think these parties had an equitable interest in the property subject to transfer to plaintiff. We do not think that it was necessary, under the facts and circumstances of this case, for plaintiff to ask for any reformation of the contract . . ." Mahler v. Milwaukee Mechanics' Ins. Co., supra. In the present case the mortgagor, Miller, agreed with the Bank to take out fire insurance on this property for the mortgagee's protection. The insurer has not paid the proceeds of the policy to any one else, and the Bank, as mortgagee, in accordance with this agreement, can enforce an equitable lien against the proceeds of the policy. On the existence of such a lien, generally, see Cox v.

Hartford Fire Ins. Co., 1935, 172 Miss. 841, 160 So. 741; 46 C. J. S., Insurance, Section 1147.

Mississippi Code, Section 5695 expressly provides that "Each fire insurance policy on buildings taken out by a mortgagor or grantor in a deed of trust shall have attached or shall contain substantially the following mortgagee clause . . .", and the statute then proceeds to recite the required terms of a standard or union mortgagee clause. In view of the above holding, we do not find it necessary in this case to consider the effect of that statute. See United States v. Sentinel Fire Ins. Co., 5 Cir., 1949, 178 F. (2d) 217.

Appellant also suggests that the policy is void because of an alleged violation by the insured of the unconditional ownership clause in the policy, which provides that the policy shall be void if "the insured has wilfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or any false swearing by the insured relating thereto". Appellant says that there was a concealment of insured's interest in the property by omission of a statement of the mortgagee's interest. But of course the preceding discussion eliminates that issue. ██ Where the insurance agent accepted an application for a fire policy and knew that the property was mortgaged, the existence of the mortgage does not invalidate the policy under the foregoing type of clause. Home Ins. Co. of New York v. Northington, 1945, 198 Miss. 650, 23 So. (2d) 537; Aetna Ins. Co. v. Sims, supra. In both of these cases there was a conflict in the testimony of the insurance company and the insured as to whether the agent had knowledge of the mortgage, and the Court affirmed a finding of knowledge on such conflicting testimony. And so here we will not assume that the agent, with knowledge of the mortgage, intended to charge Miller for and write him a policy which would be void.

The remaining issue involves appellant's charge that

there was a fraudulent submission of proofs of loss by Miller, and that this voided the policy under the above quoted clause. However, the chancellor found that although there were some errors in the proofs of loss, as quite apparently there were, there was no fraudulent intent by Miller in making his proofs of loss, but that they were good-faith errors. The record indicates that Miller was not an experienced contractor or businessman, and that he was careless in keeping his records of both his labor and material costs. However, the chancellor's finding that these were not fraudulent errors, and his allowance therefor by reducing the extent of the loss in his final decree, were correct, and not manifestly wrong. He had the opportunity of observing and hearing the witnesses, and was in a better position to determine whether the witnesses were honest than is this Court. ██ █ The Court will not presume an intent to defraud. It should make every reasonable allowance for lack of knowledge or sound judgment, or for honest mistake of the insured, as well as the tendency to believe that which is to one's own interest. 5 Appleman, Insurance Law and Practice, Secs. 3587, 3581-3598. The trial court was justified in finding that the errors were innocent, or unintentional or careless mistakes, and not fraudulent ones.

The decree of the chancery court is therefore affirmed. Affirmed.

PER CURIAM.

The above opinion is adopted as the opinion of the Court, and for the reasons therein indicated the case is affirmed.