# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 94-CA-01169-SCT

*GENERAL STAR INDEMNITY COMPANY*

*v.*

*PIKE COUNTY NATIONAL BANK*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/28/94 |
| TRIAL JUDGE: | HON. DON GRIST |
| COURT FROM WHICH APPEALED: | CALHOUN COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | LUTHER T. MUNFORD |
| | MARTHA BOST STEGALL |
| | S. T. RAYBURN |
| | WILLIAM C. BRABEC |
| ATTORNEYS FOR APPELLEE: | GRADY TOLLISON, JR. |
| | WILLIAM K. DUKE |
| | JEFFERY M. NAVARRO |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | AFFIRMED ON DIRECT APPEAL; AFFIRMED IN PART AND REVERSED IN PART ON CROSS-APPEAL AND REMANDED TO THE CHANCERY COURT - 9/25/97 |
| MOTION FOR REHEARING FILED: | 10/9/97 |
| MANDATE ISSUED: | 4/8/98 |

**BEFORE PRATHER, P.J., BANKS AND SMITH, JJ.**

**BANKS, JUSTICE, FOR THE COURT:**

¶1. Today, we affirm a decision imposing an equitable lien in favor of a bank -mortgagee on proceeds from a fire insurance policy. We hold that Miss. Code Ann. § 83-13-9 (Rev. 1991) protects a mortgagee by requiring the mortgagor and the insurer to attach a mortgagee loss payable clause in favor of the mortgagee to a fire insurance policy taken on a building subject to a mortgage. The bank is such a mortgagee, and entitled to the award granted by the Chancery Court.

## I.

¶2. On December 4, 1989, Pike County National Bank (PCNB) loaned Wendell and Julia Blount

$250,075.00 and accepted a deed of trust to property as security for the loan. The deed of trust contained a provision which required the Blounts to procure insurance to protect the property. On February 15, 1991, the Blounts conveyed the property by quitclaim deed to the LCD Corporation. This quitclaim deed indicated that LCD assumed all present and future indebtedness related to the property which included the loan from PCNB.

¶3. In May and June of 1991, the Blounts filed bankruptcy. PCNB filed a petition in the bankruptcy court requesting injunctive relief in the form of setting aside the quitclaim deed conveyed to LCD, and a monetary award to PCNB. During this proceeding it was discovered that the property was not insured and an order was issued instructing the Blounts to obtain insurance. On September 5, 1991, a commercial property insurance policy was issued to LCD Corporation by General Star Indemnity Company (General Star). PCNB was not listed on the policy as a mortgagee.

¶4. A large house on the property was destroyed by fire September 15, 1991. In October 1991, PCNB submitted to General Star a Sworn Statement of Proof of Loss. On March 16, 1992, General Star denied PCNB's claim under the policy. General Star contend that PCNB had no mortgagee relationship with LCD. PCNB filed a complaint in the Calhoun County Chancery Court against the trustee to the deed of trust, the Blounts, and General Star on July 1, 1992. PCNB sought payment of insurance proceeds from General Star and declaratory judgment clarifying PCNB's priority status. On August 7, 1992, General Star denied PCNB's allegations and asserted that it did not insure PCNB.

¶5. A trial was held on October 11, 1993, and on September 19, 1994, the chancery judge ruled in favor of PCNB and awarded damages of $675,602.78. The award represented $545,936.28 in principal and interest owed to PCNB; $49,271.10 for expenses incurred due to the Blounts for indebtedness; $18,056.12 of attorneys' fees related to an LCD bankruptcy proceeding in Louisiana; and $62,549.28 of attorneys' fees related to the bankruptcy proceedings in Mississippi. General Star filed a Notice of Appeal to this judgment November 14, 1994. PCNB cross-appealed on the issue of punitive damages and attorneys' fees for its action against General Star.

## II.

¶6. General Star claims that the trial court misapplied the equitable lien doctrine. General Star argues that PCNB had no agreement with the holder/purchaser of the insurance policy which established an equitable lien in favor of PCNB. PCNB contends that an equitable lien exists in PCNB's favor supported by an agreement by LCD to purchase fire insurance. Furthermore, PCNB relies on Miss. Code Ann. § 83-13-7 (Rev. 1991) in support of its contention that as mortgagee it had a right to the insurance proceeds.

¶7. The equitable lien doctrine was considered in ***Employers Mut. Cas. Co. v. Standard Drug Co.***, 234 So. 2d 330 (Miss. 1970). There the insurance policy contained no mortgage clause in favor of the mortgagee. Nevertheless, Relying on ***Lititz Mut. Ins. Co. v. Miller***, 210 Miss. 548, 50 So. 2d 221 (1951), this Court held that the mortgagee had an equitable lien. Mississippi law presumes an equitable lien to proceeds from insurance procured by a mortgagor in his name, after an agreement by the mortgagor with the mortgagee to insure the property for the mortgagee's benefit ***Lititz Mut. Ins. Co. v. Miller***, 210 Miss. at 557, 50 So. 2d at 225. The Court found that, although no mortgage clause appeared in favor of the second mortgagee, oral and written notice of the appellee's deed of trust was provided to the insurers prior to the settlement. Such notice was sufficient to render the

insurer liable for failing to honor the automatic lien.

## **Did PCNB have an equitable lien?**

¶8. PCNB relies on Miss. Code Ann. § 83-13-7 and testimony rendered at trial as proof that LCD agreed to insure the mortgage property to the benefit of PCNB. Miss. Code Ann. § 83-13-7 (Rev. 1991) states:

> When, by an agreement with the assured or by the terms of a fire insurance policy taken out by a mortgagor, the whole or any part of the loss thereon is payable to the mortgagee or mortgagees of the property for their benefit, the company shall, upon satisfactory proof of the rights and title of the parties, in accordance with such terms and agreement, pay all mortgagees protected by such policy in the order of their priority of claim, as their claims shall appear, not beyond the amount of which the company is liable. Such payments shall be, to the extent thereof, payments and satisfaction of the liabilities of the company under such policy.

¶9. This statute protects the interest of a mortgagee in the property where there has been an agreement by the mortgagor to provide insurance to protect the mortgaged property. ***Employers Mut. Cas. Co. v. Standard Drug Co.***, 234 So. 2d 330 (Miss. 1970). PCNB argues, however, that § 83-13-7 creates an equitable lien even when a mortgagee is not listed as a beneficiary to a insurance policy.

¶10. PCNB's reading of this statute is overbroad. Miss. Code Ann. § 83-13-7 is a priority statute, designed to clarify a mortgagee's position of recovery in relation to others, not a statute intended to provide an equitable lien. The doctrine of equitable lien is a creature of the common law, and § 83-13-7 is a statute designed to ensure that mortgagees are not displaced by the mortgagor or creditors of the mortgagor. ***Necaise v. Oak Tree Sav. Bank, SSB***, 645 So. 2d 1311 (Miss. 1994) (explaining that Miss. Code Ann. § 83-13-7 (Rev. 1991), protects mortgagees in order of priority).

¶11. Nonetheless, Miss. Code Ann. § 83-13-9, creates a duty on the part of a mortgagor and an insurer to attach a statutory loss payable mortgage clause in favor of the mortgagee in each fire insurance policy on a building subject to a mortgage. ***United States v. Sentinel Fire Ins. Co.***, 178 F.2d 217 (5th Cir. 1949). The impact of § 83-13-9 on the rights of a mortgagee to an insurance policy purchased by the mortgagor or grantor of a deed of trust was considered in ***United States v. Sentinel Fire Insurance Company***. The issue in that case was whether § 83-13-9 (then Sec. 5695, Miss. Code of 1942) had the effect of automatically including a loss payable clause in favor of the mortgagee into each fire insurance policy procured to protect mortgaged property. ***Id.*** at 221. In finding that each fire policy on mortgaged property in Mississippi automatically included a regular New York Standard Mortgage loss payable clause, the Court explained that § 83-13-9:

> [C]ast upon the insured mortgagor the duty to have attached to an insurance policy taken out by him the statutory loss payable mortgage clause in favor of his mortgagee, and also impliedly to make it the duty of the insurer likewise to comply with the statute. Since it is the duty of the mortgagor and of the insurer to have attached or inserted such a loss payable clause, then that which the statute requires to be done will be regarded as having been done. ***The statute does not require the consent of the insured; it does not require the mortgagor to take out a policy of insurance but only that if he takes out a policy on buildings covered by a mortgage such***

*policy shall contain a New York Standard loss payable clause in favor of the mortgagee*.

*Id.* at 228. (emphasis added). The Fifth Circuit accurately assessed our law.

¶12. On December 4, 1989, the Blounts mortgaged property they owned free of any liens or encumbrances in exchange for a loan in the amount of $250,075.00. Thereafter, on February 15, 1991, the Blounts conveyed the same property, now was subject to the deed of trust with PCNB to LCD via a quitclaim deed for $10 and other good and valuable consideration. LCD was not the mortgagor or grantor of a deed of trust to PCNB, but stood in the shoes of those who initially issued the mortgage to PCNB. According to the quitclaim deed granted to LCD, as a part of the conveyance, LCD assumed all indebtedness due or to become due on the mortgaged property. The insurance policy purchased by LCD can most accurately be construed as a fire insurance policy. The policy lists a variety of causes of loss that are under the basic coverage of the policy. Fire is mentioned first.

¶13. LCD assumed the Blounts' indebtedness which included the debt to PCNB. LCD's purchase of the fire insurance policy required that the policy contain a union or standard mortgage clause in favor of the mortgagee pursuant to § 83-13-9. *Nationwide Mut. Fire Ins. Co. v. Dungan*, 818 F.2d 1239, 1245 (5th Cir. 1987). Moreover, the deed of trust between PCNB and the Blounts specifies that insurance to protect the property should be purchased by the Blounts and that any proceeds resulting from damage of the mortgaged property should pass to PCNB. Clearly an equitable lien exists in the present case. The deed of trust included an agreement to insure for the mortgagee's benefit, and subsequent insurance was taken out by LCD. *Lititz Mutual Insurance Company v. Miller*, 50 So. 2d at 225. As such, we conclude that PCNB is entitled to an equitable lien in the proceeds of the policy.

¶14. As an equitable lienholder PCNB is susceptible to substantive defenses asserted by General Star against LCD. General Star asserted two defenses at trial. It claimed that LCD never acquired an insurable interest and that LCD never filed a sworn proof of loss. The chancellor found that LCD had acquired record title to the property and had record title at the time of the loss giving it an insurable interest in the property. We agree. The chancellor also found that PCNB had filed a timely proof of loss. This proof of loss was sufficient to the extent of PCNB's interest. That interest should not be defeated by the failure of the titleholder to file a proof of loss. See, *United States Fidelity and Guaranty Co. v. Arrington*, 255 So.2d 652, 656 (Miss. 1971); *Hood v. Fireman's Fund Insurance Company*, 412 F. Supp. 846 (D. C. S. D. Miss. 1976)

### III.

¶15. On cross-appeal, PCNB claims that the $675,602.78 awarded by the trial court was insufficient because the award did not include attorneys' fees and punitive damages. Included within the award, the Chancellor granted attorneys' fees of $18,056.12 to a Louisiana attorney that represented PCNB at LCD's bankruptcy proceeding, and attorneys' fees of $62,549.28 to other attorneys for a related bankruptcy proceeding in Mississippi. Under the deed of trust, the mortgagor agreed to pay reasonable attorneys' fees incurred by PCNB. However, the judgment did not include attorneys' fees incurred by PCNB as a result of bringing legal action against General Star. The lawsuit against General Star is an effort to secure payment of the note, and as such, attorneys' fees incurred within the terms of the deed of trust as an indebtedness secured thereby may be included. They are

recoverable from the provider of the insurance policy. The trial court erred in failing to include this item in its award.

¶16. Regarding the failure of the trial court to include punitive damages, we have held that punitive damages are permissible for an intentional wrong, insult, abuse, or gross negligence which yields an independent tort. General Star's behavior does not plunge to this level of misconduct. *Hans Constr. Co. Inc. v. Drummond*, 653 So. 2d 253 (Miss. 1995); *Bankers Life and Cas. Co. v. Crenshaw*, 483 So. 2d 254 (Miss. 1985); *Tideway Oil Programs, Inc. v. Serio*, 431 So. 2d 454 (Miss. 1983). Still, PCNB argues that General Star had no arguable or legitimate reason to deny payment of the insurance proceeds. Thus punitive damages are appropriate. The insurance policy between LCD and General Star does not identify PCNB as a mortgagee. In fact, the policy indicates that there are no mortgage holders to the insured property. This alone can be considered a reasonable explanation for General Star's failure to pay the claim to PCNB. Thus, the trial court did not err in failing to award punitive damages.

¶17. For the foregoing reasons the judgment of the chancery court is affirmed in all respects except as to the failure to award attorneys' fees for this litigation. This matter is remanded to the chancery court for the assessment of such fees.

¶18. **AFFIRMED ON DIRECT APPEAL; AFFIRMED IN PART AND REVERSED IN PART ON CROSS-APPEAL AND REMANDED TO THE CHANCERY COURT.**

**LEE, C.J., PRATHER AND SULLIVAN, P.JJ., PITTMAN, ROBERTS AND SMITH, JJ., CONCUR. McRAE AND MILLS, JJ., NOT PARTICIPATING.**