**Frank WATKINS, Plaintiff-Appellant,**

v.

**The CONTINENTAL INSURANCE COMPANIES, Defendants-Appellees.**

**No. 82–4179
Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Nov. 1, 1982.

**450**

Duncan Lott, Booneville, Miss., for plaintiff-appellant.

Alan W. Carter, Greenwood, Miss., for defendants-appellees.

Before GEE, RANDALL and TATE, Circuit Judges.

TATE, Circuit Judge:

On January 28, 1980 the plaintiff Watkins' home near Vardaman, Mississippi was destroyed by fire. Watkins brought this Mississippi diversity action against his homeowner's insurer to recover under the policy for the fire loss thereby sustained. At the close of the plaintiff's case, the district court granted the defendant insurer's motion for a directed verdict. The court concluded as a matter of law, relying on *Edmiston v. Schellenger*, 343 So.2d 465 (Miss.1977), that a certain statement, made by Watkins to the company in the course of its investigation of the fire, constituted willful concealment of material information, thus operating to void the plaintiff's homeowner's policy (on the theory that such statements violated the standard "concealment" clause found in the policy).

We reverse. We find *Edmiston* factually inapplicable as concerning misinformation as to an insured's whereabouts on the day of the fire that (unlike the present) was undoubtedly material. If the present statement was indeed material, we conclude that nevertheless a directed verdict was inappropriate and jury issues existed as to its materiality (as well as to its willfulness) in view of conflicting inferences and evidences upon which reasonable minds could differ. See *Boeing Company v. Shipman*, 411 F.2d 365,

374- -75 (5th Cir. 1969) (en banc) (the evidence and all inferences therefrom must be viewed in the light most favorable to the party against whom the motion was offered).

## Facts

On April 17, 1980, three months after the fire, Watkins appeared at the offices of the insurance company's attorney (pursuant to the standard cooperation clause in the 10–68 standard form homeowner's policy involved in this case). Counsel closely questioned the plaintiff for more than an hour with regard to all aspects of his private life, his financial condition, his ownership of the insured property, its contents, and its condition. At the time of the fire, the house was occupied only by Watkins' wife from whom he had separated, thus, making the relationship of the Watkins a subject of particular inquiry by the insurance company (especially with regard to the nature, number, and extent of visits made to the house by Watkins prior to the fire).

During the course of the examination, Watkins was questioned regarding his activities on the day of the fire. He stated that he had reported to work that morning at a worksite immediately south of the Mississippi-Tennessee border (approximately eighty miles north of the burned house), but that the construction site had been rained out and thus he and fellow workers had been excused for the day. He stated that he, and some of the others, went to a local tavern just across the Tennessee line called the "Red Barn" and remained there drinking beer and playing pool until midnight. Omitted from Watkins' account was that he had left from and returned to the tavern to make a court appearance at about 6:30 p. m. in Muscle Shoals, Alabama (approximately fifty miles east of the tavern; about one hundred miles northeasterly from his home) apparently on a minor charge.[1]

The district court concluded, solely on the basis of the plaintiff's failure to disclose the Muscle Shoals trip, that *Edmiston v. Schellenger* required a directed verdict in favor of the defendant as a matter of law. On appeal, Watkins concedes that his April, 1980 deposition statement was inaccurate. However, he denies that the statement was either material or knowingly and willfully made with the intent to deceive.

## Applicable Legal Principles

Under Mississippi law, an insurance company seeking to defeat a policy on the basis of a "concealment" clause of the type involved in this case[2] must establish that statements made by the insured were 1) false *and* 2) material *and* 3) knowingly and willfully made.[3] The purpose of requiring

---

1. Such was the surmise of the district court: "I guess from the evidence, it's indicated that he appeared in City Court on a charge there in Muscle Shoals." [R.II, 101]

2. The standard form 10–68 clause reads:
   Concealment, Fraud.
   The entire policy shall be void if, whether before or after a loss, the insured has willfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto.
   Such clauses are far from new. A 1904 Mississippi Supreme Court case refers to "the usual clause as to fraud or false swearing", *Home Insurance Co. of New York v. Lowenthal*, 36 So. 1042, 1042 (Miss.1904), while almost identical language may be found in *Claxton v. Fidelity & Guaranty Fire Corp.*, 179 Miss. 556, 175 So. 210 (1937).

3. See Ulmer, *1977 Mississippi Supreme Court Review—Insurance* 49 Miss.L.J. 301, 377–80 (1978).
   Litigation in the Mississippi courts over such clauses has a long history. *See, e.g., Phoenix Insurance Co. v. Summerfield,* 70 Miss. 827, 13 So. 253 (1893); *Home Insurance Co. of New York v. Lowenthal, supra; Mississippi Fire Insurance Co. v. Dixon,* 133 Miss. 570, 98 So. 101 (1923); *Claxton v. Fidelity & Guaranty Fire Corp., supra; Lititz Mutual Insurance Co. v. Miller,* 210 Miss. 548, 50 So.2d 221 (1951); *Standard Insurance Co. of New York v. Anderson,* 227 Miss. 397, 86 So.2d 298 (1956); *Anderson v. American and Foreign Ins. Co.,* 227 Miss. 324, 86 So.2d 303 (Miss.1956); *New England Insurance Co. v. Cummings,* 164 F.Supp. 553 (S.D.Miss.1958); *Glen Falls Insurance Co. v. Linwood Elevator,* 241 Miss. 400, 130 So.2d 262 (1962); *Boston Insurance Company v. Mars,* 148 So.2d 718 (Miss.1963); *Southern Guaranty Insurance Co. v. Dean,* 252 Miss. 69, 172 So.2d 553 (1965); *Taylor v. Firemen's Fund Insurance*

truthful answers from the insured is to enable the company to obtain all facts "material" to their rights to enable them to decide on their obligations and "to protect them[selves] against false claims." *Edmiston, supra,* 343 So.2d at 466–67. Fulfillment of the first element is not in dispute. The plaintiff admits that in his answer to a discovery deposition question he neglected (allegedly through inadvertence) to state that he had left the tavern to go to Muscle Shoals (some distance away from the fire at his home) to make a court appearance on the day of the fire. Thus, the only question presented by this appeal is whether *Edmiston v. Schellenger* required the district court, as a matter of law, to hold that this misstatement was "material" and that it was knowingly and willfully made with intent to deceive.

In contending that directed verdict was proper, the defendant insurer principally relies upon *Edmiston v. Schellenger,* 343 So.2d 465 (Miss.1977). There, the Mississippi Supreme Court reversed a trial court and held that the insured's misstatements as to his whereabouts on the day of the fire were material as a matter of law. The court stated that the insured's "activities on the day of the fire were most material, because of the company's need to determine the actual cause of the fire." 343 So.2d at 467. In *Edmiston,* however, the insured's false statements were that he had been in the hospital at the time of the fire and had not returned home. Since the insurer needed to determine the actual cause of the fire, the court concluded that it was entitled to know whether the insured had visited the house on the day of the fire. On the basis of the record before it, the Mississippi Supreme Court inferred that willfulness also had been clearly demonstrated by the insured's

"persistent refusal", 343 So.2d at 467, to correct his statements for over two and a half years after admitting their factual inaccuracy.

*Application to Present Facts*

■ We do not read *Edmiston* as holding that *any* misstatement of whereabouts on the day of the fire is material. For instance, if the misstatement was that the insured was in France (whereas actually he was in Germany) on the day his Mississippi home burned, it is not readily possible to conceive that such misstatement would be material. Under the facts in *Edmiston,* the insured's presence or not in the hospital (an alibi for any suspicion of arson), was undisputably material, "judged at the time of the misrepresentation, not at the time of the trial." *Edmiston,* 343 So.2d at 467. The court's statement that his activities on the day of the fire were "most material" must be read in the context of the facts to which it applied.

■ Here, however, the materiality of the misstatement (as well as its willfulness) is far from indisputable. Whether Watkins, the insured, was at the tavern in Tennessee, some eighty miles north of the Mississippi home that burned, or instead at the courtroom in Muscle Shoals (about one hundred miles northeasterly of the home), does not on its face seem to be material to the interests of the insurer in determining the cause of the fire; any more than if the misstatement had been "France" instead of "Germany." The significance and materiality, if any, of the omission in the statement of the Muscle Shoals trip to and from the tavern was, at the least, an issue for the jury to determine.

Further, even if the failure to disclose the trip were found to be material, there is a

---

*Co., supra;* as well as *Edmiston v. Schellenger, supra,* relied on by the court below.

Despite this history, an explicit and workable definition of "materiality," useful in the present case and fashioned within the concealment clause context, has not emerged from the Mississippi courts. This is perhaps explained by observing that in the overwhelming majority of cases, the materiality of the information involved is not, or cannot be, disputed. Typical-

ly, insurance investigations seek either to establish arson or loss overvaluation by the insured, and the information sought involves either motive and opportunity in the former (*see, e.g., Dean, supra*), or the actual value of lost property in the latter (*see, e.g., Claxton, supra*). While the information *sought* in the present case was clearly relevant to an arson investigation, the relevance of the information (and misinformation) *given* is far from clear.

substantial issue as to the willfulness of the misstatement at the time of the deposition, likewise a requirement for invocation of the concealment clause, or of any attempt thereafter to conceal it or to persist in the misstatement (as did the insured in *Edmiston*). There is at least some evidence[4], for instance, that at the time of his April deposition the plaintiff was confused about the exact date of his Muscle Shoals court appearance, and may not have realized that it had taken place on the date of the fire.

We note that in his hour-long discovery deposition taken by the defendant's counsel, the plaintiff Watkins apparently answered fully and with apparent frankness all questions posed, including those relating to some rather personal details concerning his marriage relationship. In the twenty-seven legal-sized pages of deposition, the failure to inform of the trip to Muscle Shoals occurs only in four lines (Deposition, p. 11):

Q How long did you stay at the Red Barn?

A Until about twelve o'clock that night.

Q And you got there that morning?

A (Nodding affirmatively)

There was no further questioning, for instance, to whether he had left the Red Barn during that time. The record does not reflect that the insurer ever brought to Watkins' attention this oversight or misstatement or gave him prior occasion to refresh his memory or correct the inaccurate information until the day of the trial.

*Conclusion*

Accordingly, we REVERSE the judgment of the district court and REMAND the case for further proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.

---

4. The trial court concedes that there is some question about whether the plaintiff realized that he had been to Muscle Shoals on the day of the fire.