**STATE FARM FIRE AND CASUALTY COMPANY, Plaintiff,**

v.

**Willie RAMSEY, Georgia Ramsey, and Tower Loan of Mississippi, Inc., Defendants.**

**Civ. A. No. E88–0035(L).**

United States District Court,
S.D. Mississippi, E.D.

May 12, 1989.

Herman M. Hollensed, Jr., Bryan, Nelson, Allen, Schroeder & Randolph, Hattiesburg, Miss., for plaintiff.

William J. Lutz, Jackson, Miss., Travis Buckley, Ellisville, Miss., for Willie and Georgia Ramsey.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This court has pending before it two motions, a motion by plaintiff State Farm Fire and Casualty Company (State Farm) for summary judgment on the counterclaims of Willie B. Ramsey and Georgia Ramsey or alternatively for partial summary judgment dismissing their claims for punitive damages, and a motion for partial summary judgment by defendant Tower Loan of Mississippi, Inc. (Tower). The parties against whom each motion is directed have responded and the court has considered the memoranda of authorities together with attachments submitted by the parties.

State Farm brought this declaratory judgment action seeking a determination of its rights and liabilities under a policy of homeowner's insurance issued by State Farm to Willie B. Ramsey. The policy covered Ramsey's residence premises located in Bay Springs, Mississippi and had an initial policy period of October 17, 1986 to October 17, 1987. The policy listed Willie B. Ramsey as named insured and Tower as mortgagee. The insured premises was totally destroyed by fire on September 16, 1987 following which a dispute arose concerning the ownership of the insured property and the Ramseys' entitlement to recover the proceeds of the policy. In response to State Farm's complaint for declaratory relief, the Ramsey defendants answered and counterclaimed to recover under the policy for the loss of dwelling and contents.

In support of its motion for summary judgment, State Farm claims that neither Willie Ramsey nor his wife Georgia Ramsey can recover under the dwelling provisions of the policy since neither was an owner of nor had an insurable interest in the property at the time of the fire. Additionally, State Farm alleges that Willie Ramsey, the insured, cannot recover under the dwelling coverage since he was responsible for procuring the burning of the premises. Plaintiff further charges that Mr. Ramsey is precluded from recovering under the contents provisions of the policy because of his incendiarism and because he misrepresented to State Farm material facts regarding the fire and his loss. Georgia Ramsey, plaintiff claims, has failed to submit a proper proof of loss statement to State Farm and had no insurable interest in the contents located in the insured building such that she, too, has no right to recover under the contents portion of the policy. The Ramseys deny each of these assertions by State Farm, and both claim entitlement to recover fully under the policy for both the dwelling and the contents. Tower has also moved for summary judgment as to the issue of its ownership of the property at issue.

### DWELLING COVERAGE

The undisputed facts show that Willie Ramsey and Georgia Ramsey were married on December 15, 1956. On June 4, 1968, James Sumrall executed a warranty deed in favor of Willie and Georgia Ramsey conveying to them, as tenants in common, lot 3 of block 5 in the L.L. Denson Addition to the Town of Bay Springs, Mississippi. On that date, Mr. and Mrs. Ramsey executed a deed of trust in favor of Bay Springs Bank granting the bank a security interest in the property. Thereafter, the Ramseys constructed a home on the premises. Sometime between 1978 and 1980, however, Mrs. Ramsey moved to Illinois to live with her daughter, allegedly as the result of severe beatings at the hands of Mr. Ramsey.

In August 1980, Bay Springs Bank foreclosed on the Ramseys' deed of trust; Don Husbands purchased the property at the foreclosure sale and was conveyed the property by virtue of a substitute trustee's deed. Subsequently, on September 9, 1981, Husbands conveyed the same property to Willie Ramsey by quitclaim deed. Following his repurchase of the property, Mr. Ramsey razed the home he and Mrs. Ramsey had built and constructed a new home in its place. Mr. Ramsey then applied for homeowner's insurance with State Farm requesting $30,000 coverage on the dwelling and $15,000 for contents. The policy was issued with Willie Ramsey as the named insured.

On September 16, 1986, Mr. Ramsey obtained a loan of $18,555.30 from Tower which was secured by a deed of trust to Tower covering the property. Upon Mr. Ramsey's default in his payment obligations under the note secured by the deed of trust, Tower instituted foreclosure proceedings, resulting in a trustee's deed's being executed on June 18, 1987 conveying the property to Tower for $14,310.52. Mr. Ramsey, however remained in the home. Approximately three months later, the property was destroyed by fire.[1] On these facts, State Farm argues that Tower had the only insurable interest in the dwelling at the time of the fire and that Willie and Georgia Ramsey thus had no insurable interest in the premises. And, since the policy at issue clearly states that State Farm "shall not be liable to the insured for an amount greater than the insured's interest," State Farm contends that the Ramseys may not recover under the policy for the destruction of the dwelling.

The Ramsey defendants, in their effort to defeat Tower's claim to the policy proceeds and to procure payment from State Farm under the policy, dispute Tower's ownership of the property. They take the position that Tower acquired no interest in the property because Tower's foreclosure

---

1. It is alleged that Tower attempted, without success, to evict Mr. Ramsey from the home on three separate occasions. The day before the fire, electric service to the home was disconnect-

ed due to Ramsey's severe arrears in payment of charges due. Therefore, on that day, Mr. Ramsey left the house.

pursuant to the September 16, 1986 deed of trust was void with the result that the Ramseys remained the property owners and hence the parties with the only insurable interest. In support of this position, defendants reason as follows: At the time of the Bay Springs Bank foreclosure in 1980, Willie and Georgia Ramsey held the property as tenants in common. The purchase of the homestead from Don Husbands by Willie Ramsey over a year later was nothing more than a redemption of the property for the benefit of both Mr. Ramsey and Mrs. Ramsey, who thereafter held the property as tenants by the entirety. As such, Mr. Ramsey could not validly encumber the parties' property without the consent of Mrs. Ramsey, and therefore, the deed of trust in favor of Tower was void. Relying on *Gavin v. Hosey*, 230 So.2d 570 (Miss.1970), *Watson v. Vinson*, 108 Miss. 600, 67 So. 61 (1915), and *Wyatt v. Wyatt*, 81 Miss. 219, 32 So. 317 (1902), the Ramseys claim that under Mississippi law, when a cotenant purchases at a foreclosure sale or redeems after a deed of trust has been foreclosed and the property sold to a third party, the cotenant is considered to have purchased or redeemed for the benefit of himself as well as his cotenant. However, these cases do not stand for the proposition advanced by defendants. Indeed, in *Clapper v. Powers*, 222 Miss. 878, 77 So.2d 808, 813 (1955), the Mississippi Supreme Court explained as follows

> "[I]f without collusion a third person purchases the property at a judicial sale for the debt of all, and afterwards conveys the title to one of the former cotenants, the latter takes a good title as against his erstwhile cotenants, since the acquisition of title by a third person operates to terminate the cotenancy." 14 Am.Jur. p. 126.

. . . . .

> "Where a cotenancy has been extinguished by a judicial sale of the property, as on foreclosure and expiration of the period of redemption, it has been held that the rule precluding a cotenant from acquiring a title to the common property for his own benefit does not apply in the absence of fraud or an agreement to acquire it for the common benefit, and the motives which prompted him to do so are immaterial.... 86 C.J.S. *Tenancy in Common*, § 60, p. 429.

> "The rule precluding the acquisition of title to common property by a cotenant for his sole benefit is coextensive only with the existence of the relationship of cotenancy and does not apply to a purchase by a cotenant after the cotenancy is terminated * * *." 86 C.J.S. *Tenancy in Common*, § 59, p. 425.

*Clapper*, 77 So.2d at 813–14; *see also Dean v. Simpson*, 235 Miss. 162, 108 So.2d 546, 549 (1959) (no right of equity of redemption survives foreclosure and sale under deed of trust in Mississippi); *Smith v. Smith*, 211 Miss. 481, 52 So.2d 1, 4 (1951).

The Ramseys have made no suggestion whatsoever that there was any fraud or collusion in connection with Mr. Ramsey's repurchase of the property from Husbands nor any allegation that there existed between the Ramseys an agreement that Mr. Ramsey would acquire the property for the benefit of both himself and his wife. Nevertheless Mr. Ramsey claims (as he must to have any chance of recovery for loss of the dwelling under State Farm's policy) that he intended that his purchase from Husbands was for Mrs. Ramsey's benefit as well as his own. This intent, he claims, is evidenced by the fact that in the years 1980, 1981, 1982, 1986 and 1987, he listed his wife as Georgia Ramsey on his applications for homestead exemption. This fact, however, proves only that Mr. Ramsey considered Mrs. Ramsey his wife during those years; in this regard, it is undisputed that she was his wife and in fact to this day remains his wife. Moreover, Mr. Ramsey himself stated in an affidavit in response to plaintiff's motion that after Mrs. Ramsey had left the home and removed to Illinois, she asked on several occasions to be allowed to return to the home, "but, I refused because I knew that if she went to court she would be entitled to the same rights to the house and property as I." Thus, Mr. Ramsey has acknowledged that he did not want to share any rights in the house or property with his

wife. This acknowledgement is completely at odds with Mr. Ramsey's representation of his subjective intent at the time he repurchased the property in 1981. Finally, had Mr. Ramsey actually intended to repurchase the property for himself and his wife, he could easily have effected that result simply by having them both named as grantees in the deed from Husbands. This he did not do and the property was deeded by Mr. Husbands to Mr. Ramsey only.

■ Based on the foregoing, the court concludes that the 1980 purchase of the subject property by Husbands severed the cotenancy of the Ramseys and Mr. Ramsey was not precluded from later acquiring the property for his sole benefit. Moreover, even if Mr. Ramsey's claimed intentions regarding his repurchase of the property are relevant despite the fact that he was not by law precluded from acquiring the property for himself only and that he was the sole grantee under the Husbands deed, the trier of fact could not reasonably find on the slight evidence presented by these defendants that Mr. Ramsey intended to benefit Mrs. Ramsey by securing the property from Husbands.

■ The Ramseys next claim that even had the Tower foreclosure been valid and the repurchase from Husbands been for the benefit of Willie Ramsey only, the property was still the homestead of both parties, irrespective of the fact that Mrs. Ramsey never resided in the home. They argue, therefore, that Mr. Ramsey was without authority to encumber the homestead property and that his deed of trust to Tower and the subsequent foreclosure were void. In this regard, defendants rely on *Welborn v. Lowe*, 504 So.2d 205 (Miss. 1987), in which the court stated

Miss.Code Ann. § 89–1–29 (Supp.1986) provides that "(a) conveyance, mortgage, deed of trust or other incumbrance upon a homestead exempted from execution shall not be valid and binding unless signed by the spouse of the owner if the owner be married and living with the

spouse...." The cases are legion construing the above section to mean that a conveyance of homestead without a spouse joining in the execution of the deed is absolutely void. No subsequent action by the non-joining spouse cures the invalidity of it. In the event the spouse is required or forced to leave the homestead on account of the misconduct of the other spouse, and is absent at the time of execution of the deed of conveyance, the deed instrument likewise is invalid.

*Welborn,* 504 So.2d at 207. Defendants, recognizing that Mrs. Ramsey did not live in the home and had visited no more than a few days each year, nevertheless seek the benefit of this rule claiming (as they must) that Mrs. Ramsey did not voluntarily abandon the homestead but rather was forced to leave and prevented from returning by the misconduct of Willie Ramsey and in particular, by severe beatings inflicted upon her by him.

In the court's opinion, however, the above rule has no application to the facts *sub judice* since Mrs. Ramsey never lived in the home that is the subject of this dispute and had no interest in the home or the property on which it was situated. She was absent not only "at the time of execution of the deed of conveyance," but for at least five years preceding execution of that deed and at all times since the execution. Even if, as the Ramseys now claim, Mrs. Ramsey initially chose to reside apart from her husband as the result of his merciless beatings, it remains a fact that following Mr. Ramsey's repurchase and construction of a new home on the property, Mrs. Ramsey never resided there and hence it was not her homestead.[2] Based on the foregoing, it is clear that after the foreclosure sale by Tower on June 18, 1987, Tower was the sole owner of the dwelling and neither Georgia Ramsey nor Willie Ramsey had an insurable interest in the property. Consequently, neither is entitled to recover under the dwelling provisions of the subject poli-

---

**2.** Not only did Mrs. Ramsey not reside with Mr. Ramsey, but as reflected in Mr. Ramsey's affidavit, his girlfriend lived in the home with him and would not have tolerated the presence of his wife as a resident of the home.

cy. Accordingly, the motion of State Farm for summary judgment as to this issue should be granted as should the motion by Tower for summary judgment.

### CONTENTS COVERAGE

*Georgia Ramsey*

■ State Farm contends that Georgia Ramsey cannot recover under the policy for the loss of contents belonging to her since she failed to comply with a condition precedent to recovery under the policy, that condition being the filing of a proper proof of loss. The relevant policy provision, under the heading "Conditions," stated as follows:

Your Duties After Loss. In case of a loss to which this insurance may apply, you shall see that the following duties are performed:

\* \* \* \* \* \*

e. Submit to us, within 60 days after we request, your signed, sworn statement of loss which sets forth, to the best of your knowledge and belief:

(1) the time of the loss;

(2) interest of the insured and all others in the property involved and all incumbrances on the property;

(3) other insurance which may cover the loss;

(4) changes in title or occupancy of the property during the term of the policy[.]

It is undisputed that six days following the loss Mrs. Ramsey submitted to State Farm a sworn statement in proof of loss. In that proof of loss, however, Mrs. Ramsey indicated that she did not know the actual cash value of the contents in the home at the time of the loss, that she did not know the actual loss and damage to the property as a result of the fire, and that she did not know

the cost of repair or replacement of that property. In response to that proof of loss form, State Farm advised Mrs. Ramsey by letter that it declined to accept her proof of loss because it did not state the interest of the insured and all others in the property and did not state whether there had been any change in the title, use or possession of the property since the policy had been issued. A week later, State Farm took Mrs. Ramsey's statement under oath in which she stated that she did not know what contents she had in the home at the time of the fire. Based on this evidence, State Farm seeks summary judgment on Mrs. Ramsey's claim for contents coverage.

State Farm's objection is not that Mrs. Ramsey failed to file a proof of loss altogether but rather that the proof of loss she did file was inadequate since it did not provide the specific information requested.[3] However, Mrs. Ramsey explained both in her deposition and statement under oath that she had not been at the home for over nine months preceding the fire and was simply not in a position to know whether the property which she claimed to have lost as a result of the fire was in the home at the time of the fire. She did, though, state that those items of furniture and other belongings for which she sought to recover were in the house during her last visit nine months before the fire.

What was required by State Farm's policy was that Mrs. Ramsey provide in the proof of loss "to the best of [her] knowledge and belief" the requested information. That Mrs. Ramsey may simply have not known and hence was unable to furnish the requested information would in the court's view appear to present a question of fact as to the alleged violation of the policy requirements.[4] Of course, Mrs. Ramsey in order to recover must establish by some

---

**3.** Mrs. Ramsey claimed in response to plaintiff's motion for summary judgment that State Farm is estopped from asserting the inadequacies of her proof of loss as a defense to payment since State Farm did not provide her with blanks upon which to make her proof of loss as required by Miss.Code Ann. § 83–13–13 (1972). This argument is most difficult to comprehend since Mrs. Ramsey's proof of loss was made on a State Farm proof of loss form.

**4.** Although plaintiff contends that the providing of a proper proof of loss is a condition precedent to recovery under the policy, the court is not convinced that such is the case. While the language of the policy does provide that a proof of loss must be submitted to the company following a loss, the policy does not advise that recovery will be denied in the event that condition is not met. *See Hood v. Fireman's Fund Ins. Co.,* 412 F.Supp. 846, 852–53 (S.D.Miss.1976) (since policy did not expressly or impliedly

means that she owned contents in the home at the time of the fire. However, even if she did not and does not have personal knowledge that her property was in the home at the time of the fire, she is not precluded from attempting to prove that fact by other means such as through the testimony of her husband or others who were aware of the location of her property. Therefore, the court is of the opinion that the fact finder could conclude that Mrs. Ramsey complied with the policy requirement of filing a proper proof of loss. That matter is to be reserved for a trial of this cause.

*Willie Ramsey*

■ As to Willie Ramsey's claim for contents coverage, State Farm contends that Mr. Ramsey misrepresented to State Farm, during the course of its investigation, facts concerning personal property for which he claimed recovery and facts concerning his whereabouts on the night of the fire. The policy provided that State Farm would "not provide coverage for any insured who has intentionally concealed or misrepresented any material fact or circumstance relating to the insurance." State Farm therefore claims that it is entitled to summary judgment that Mr. Ramsey may not recover under the policy from State Farm as a matter of law based on those misrepresentations. In support of its claim, State Farm asserts that Mr. Ramsey submitted a personal property inventory form to State Farm soon after the fire on which he listed various items of personal property which

he represented were in the house at the time of the fire, their age, and actual cash value. Thereafter, Mr. Ramsey deleted numerous of those items, admitting they were not in the home at the time of the fire. Additionally, he reduced the actual cash value of a number of items he had listed on the form, admitting that he had overvalued them. And, Mr. Ramsey indicated on that form that none of the items of personal property was over four years old though he later in deposition testimony admitted that the majority of the contents in the house at the time of the fire had been purchased prior to 1980, some seven years before the fire. In the court's opinion, the significance and materiality of these representations are issues for the trier of fact to determine at trial. *Charles Stores, Inc. v. Aetna Ins. Co.,* 428 F.2d 989, 991 (5th Cir.1970). Moreover, the court perceives a substantial issue as to the willfulness of these misstatements at the time they were made. *See Watkins v. Continental Ins. Cos.,* 690 F.2d 449, 452–53 (5th Cir.1982). In sum, there is a genuine issue as to whether Mr. Ramsey intentionally made misrepresentations or concealments with the intent to defraud State Farm such as would result in his forfeiture of recovery under the contents coverage of the policy, and that is an issue reserved for consideration on a trial of this cause.[5]

Regarding the alleged misrepresentation concerning Mr. Ramsey's whereabouts on the night of the fire, he initially testified in his statement under oath that he had been at work for his employer that night and

make giving of written notice and filing of proof loss conditions to suit or recovery, plaintiff's failure to comply did not constitute forfeiture of right to recovery in absence of proof that insurer was prejudiced by noncompliance); *Hartford Accident & Indem. Co. v. Hattiesburg Hardware Stores, Inc.,* 49 So.2d 813, 818–20 (Miss.1951) (where policy contained notice requirement but did not provide that failure to give notice or file proof of loss would relieve insurer from liability or by necessary implication make notice provision essence of contract, failure of insured to give notice within required time could not be relied on by insurer unless it could demonstrate prejudice resulting therefrom); *see also Tucker v. Aetna Cas. & Sur. Co.,* 801 F.2d 728, 732 (5th Cir.1986) (insured's failure to comply with conditions in policy will ordinarily not defeat insured's claim unless breach of condition results

in prejudice to insurer). State Farm has not, so far as the court can discern, made any claim that Mrs. Ramsey was the sole source of the requested information or that its ability to evaluate her alleged loss was unduly hampered by her failure to provide that information. However, because the court concludes that, even assuming that filing of a proof of loss was a condition precedent to recovery, one could find that Mrs. Ramsey complied with that condition, the court need not, at least at the present time, resolve these issues.

**5.** From the proof submitted by State Farm, it appears that Mr. Ramsey voluntarily amended his personal property inventory form prior to any decision by the company regarding payment under the policy and at his own instance rather than at the instance of State Farm.

had not left his employer's place of business. Later, in his deposition, he stated that at approximately 10:00 p.m. on the night of the fire he had left his employment for approximately thirty minutes; the fire is said to have started around 2:00 to 3:00 a.m. State Farm claims, therefore, that since there was evidence that the fire was incendiary in origin, information concerning Mr. Ramsey's activities on the night of the fire was critical to its investigation. To support its claim for summary judgment on this issue, State Farm relies primarily on *Edmiston v. Schellenger,* 343 So.2d 465 (Miss.1977), in which the court held that the insured's misstatements as to his whereabouts on the day of the fire were under the circumstances material as a matter of law, "because of the company's need to determine the actual cause of the fire." *Edmiston,* 343 So.2d at 467. *Cf. Watkins,* 690 F.2d at 452 (not every misstatement about whereabouts on day of fire is material under *Edmiston* ). Assuming that the statement at issue in the case at bar was material to State Farm's investigation, there is nevertheless an additional question of willfulness. In *Edmiston,* the court found the insured's willfulness could be clearly inferred from his persistent refusal to correct his statements for over two and a half years. In contrast, State Farm has not established an intentional design by Mr. Ramsey to defraud. Accordingly, as to this issue, there exists a genuine issue of fact which precludes resolution of this issue by the court at this stage in the proceedings. *See Watkins,* 690 F.2d at 452.

## PUNITIVE DAMAGES

■ Willie Ramsey, in response to plaintiff's motion, concedes that he may not recover punitive damages, presumably because there does exist evidence which might tend to establish by State Farm a defense of arson. Georgia Ramsey, however, urges that she is entitled to have the issue of punitive damages submitted to the trier of fact for a decision. In *McGory v. Allstate Insurance Company,* 527 So.2d 632 (Miss.1988), the court held that an innocent spouse may recover under an insurance policy despite the wrongful acts of the other spouse which preclude his recovery,

absent a contrary policy exclusion. *McGory,* 527 So.2d at 638. State Farm acknowledges that *McGory,* which was decided approximately two months after the present suit was filed, precludes it from now relying on Mr. Ramsey's alleged arson as a defense to payment of Mrs. Ramsey's claim. Nevertheless, it asserts that since *McGory* was a case of first impression in Mississippi on this issue and was decided after its denial of the claim and after this suit was filed, punitive damages based on its previous denial of her claim must be denied. *See Michael v. National Security Fire & Casualty Co.,* 458 F.Supp. 128 (N.D.Miss.1978). Additionally, it contends that irrespective of Mr. Ramsey's alleged arson, it had—and continues to have—a legitimate and arguable reason for refusing to pay Georgia Ramsey's claim. *See Tucker v. Aetna Cas. & Sur. Co.,* 609 F.Supp. 1574, 1580 (S.D.Miss.1985) (dispute as to whether insured has satisfied condition of policy furnishes arguable basis for denial of claim), *aff'd in part and rev'd in part on other grounds,* 801 F.2d 728 (5th Cir.1986). With regard to both these arguments, the court agrees. The court would further observe that State Farm's refusal to pay Georgia Ramsey's claim does not demonstrate malice or gross negligence by State Farm, and Georgia Ramsey has presented no proof of any improper motivation in State Farm's denial of her claim. *See American Mfrs. Mut. Ins. Co. v. Cupstid,* 673 F.Supp. 186, 188 (S.D.Miss.1987) (insured must demonstrate lack of arguable reason *and* malice or gross negligence to recover punitive damages). Accordingly, the motion for summary judgment by State Farm as it relates to the issue of punitive damages is well taken and should be granted.

In conclusion, State Farm's motion for summary judgment is granted in part and denied in part as set forth herein. Further, Tower's motion for summary judgment is granted.

ORDERED.