# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-CA-00704-COA

**THE ESTATE OF BARBARA ANN RALEY, DECEASED: KENNETH RICHARD SIMPSON**　　　　　　　　　　**APPELLANT**

**v.**

**BILLY WAYNE KEEL, ADMINISTRATOR, BILLY WAYNE KEEL, INDIVIDUALLY, JOHN RUSSELL KEEL, JAMES VIRGIL KEEL, AND CHARLES ARNOLD KEEL**　　　　　　　　　　**APPELLEES**

| | |
|---|---|
| DATE OF JUDGMENT: | 02/07/2022 |
| TRIAL JUDGE: | HON. LAWRENCE LEE LITTLE |
| COURT FROM WHICH APPEALED: | CALHOUN COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | EDWARD DUDLEY LANCASTER |
| ATTORNEY FOR APPELLEES: | PAUL M. MOORE JR. |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | AFFIRMED - 12/05/2023 |
| MOTION FOR REHEARING FILED: | |

**BEFORE CARLTON, P.J., McCARTY AND SMITH, JJ.**

**McCARTY, J., FOR THE COURT:**

¶1.　Two cousins were co-tenants of a piece of property in North Mississippi. One owned a house with fire insurance; after her death, the home burned. Although he was not listed on the policy, the surviving cousin claimed he should receive benefits from the insurance contract. Instead, the chancery court found the descendants of the deceased cousin would inherit the proceeds.

¶2.　The surviving cousin appeals. Finding the chancery court followed both the general rule that an insurance policy does not run with the land and, specifically, that there was no proof the surviving cousin contributed to the cost of the insurance or that the insurance was

for his benefit, we affirm.

## BACKGROUND

¶3.     The paramount facts of this case are not greatly in dispute.  Claude Raley owned property in Calhoun County.  In 1981, he executed a special warranty deed to two beloved family members, Barbara Raley and Kenneth Simpson.  This deed specifically noted the consideration included "the love and affection which I have for my niece and nephew[.]" The interest in the land conveyed to both was "joint tenants with rights of survivorship and not as tenants in common[.]"  Ms. Raley subsequently moved to the property.

¶4.     But in 2019, she obtained insurance coverage for what was listed as a frame construction home on the property.  The policy included coverages of $50,000 for the dwelling, $25,000 for personal property, and other amounts for physical harm and medical payments.  The declarations page of the policy has a line that states, "No Related Private Structures Coverage."  The premium was $1,081.  Ms. Raley was the sole named insured.

¶5.     This policy was current at the time she passed later that same year in September 2019. She died without children and without a will.  Very soon thereafter, under circumstances not contained in the record, her home burned.

¶6.     Ms. Raley's cousin and co-tenant, Simpson, then filed a claim for loss with the insurer.  He later alleged a check from the insurer was "delivered" to him in the amount of $67,158.27.  The check expired, as it was not cashed.

## PROCEDURAL HISTORY

¶7.     The following year, Ms. Raley's brother Billy Wayne Keel petitioned the Calhoun

2

County Chancery Court for letters of administration, which was joined by Ms. Raley's other brothers. The chancery court appointed him to fulfill that role, finding "that the deceased's estate consisted chiefly of real property, as said deceased owned very little personal property." It appears that the insurance company then wrote another check to Keel in his role as administrator of the estate.

¶8.     A petition for a determination of heirship followed, which alleged "Barbara Ann Raley was the owner of a certain parcel of real property located in Calhoun County, Mississippi," and asked for the four brothers to be named as her heirs.

¶9.     At this point, Simpson intervened in the action, pointing out that while his cousin had possessed an ownership interest in the land, the interest was "as a joint tenant with Right of Survivorship" with him "and not as [a] tenant in common." As such, he alleged he "became the owner of all such real estate in fee simple" upon her death. He then pointedly denied that the four brothers should be allowed any ownership interest in the land.

¶10.    Simpson went further and cross-claimed for the insurance proceeds resulting from Ms. Raley's burned home, less the contents of the house. He claimed that upon her death any interest in the real property and attached home reverted to him, so he should receive the benefit of the policy for the house, less the contents, to the complete exclusion of the brothers.

¶11.    A series of hearings were held. Notably, no witness ever testified despite the urging of the learned trial judge that a dispute over proceeds like this required more than mere allegations. Guided by precedent, the trial court repeatedly inquired as to who exactly

3

tendered the premiums on the policy—whether it was Ms. Raley alone, or if her cousin Mr. Simpson assisted. No evidentiary proof was made on this point by testimony or affidavit. Ultimately, counsel for the parties asked the trial court to rule on the briefs and legal arguments of the parties alone.

¶12. The trial court found in favor of Ms. Raley's adjudicated heirs. Relying on a key decision from the Mississippi Supreme Court, the trial court made a finding of fact that Ms. Raley "obtained and paid for the policy without contribution" from her cousin. "She was the owner and named beneficiary in the policy," and of the relevant inquiry established by precedent, "the insurance policy was taken out solely for [her] benefit," so "the proceeds of the policy are property of the estate."[1] In so finding, the trial court dismissed Simpson's arguments with prejudice and confirmed he was now vested with a fee simple interest in the entirety of the property.

¶13. Simpson appealed, and the case was assigned to us for review.

## DISCUSSION

¶14. On appeal, Simpson raises four assignments of error, which center on property law rather than the insurance cases applied by the trial court. His core argument is that as a co-tenant of the real property with Ms. Raley, upon her death he should have automatically received the proceeds of the insurance his cousin received for her home. Before turning to his arguments, we first address the applicable precedent in cases of this type.

---

[1] The trial court's order concludes that Ms. Raley lived in a mobile home. Because we find the application of the insurance contract is dispositive, the type of home does not impact our analysis.

### *The General Rules of Property and Insurance*

¶15.    The cousins, in this case, were granted interests in the property "as joint tenants with rights of survivorship." When a "devise[] of land [is] made to two (2) or more persons," the conveyor may expressly choose to "create an estate in joint tenancy . . . with the right of survivorship" as opposed to an estate in common. Miss. Code Ann. § 89-1-7 (Rev. 2021). "By virtue of survivorship, the property descends outside of probate from the deceased joint tenant to the surviving joint tenant." *Jones v. Graphia*, 95 So. 3d 751, 753 (¶7) (Miss. Ct. App. 2012). "The decedent's share does not have to pass to the survivor because the survivor already owns the whole." *Id*.

¶16.    This case involves a dispute over whom should be paid the proceeds of an insurance contract. "An insurance policy is a contract between the insurer and the insured." *Clarendon Nat. Ins. Co. v. McAllister*, 837 So. 2d 779, 780 (¶5) (Miss. Ct. App. 2003). "A contract is to be construed and enforced as written." *Id*.; *see Lynch v. Miss. Farm Bureau Cas. Ins. Co.*, 880 So. 2d 1065, 1070 (¶16) (Miss. Ct. App. 2004) ("Mississippi law acknowledges that the standard insurance policy is a contract, and its terms are a matter of usual contract interpretation unless some statutory imperative controls"); *Miss. Ins. Guar. Ass'n v. Blakeney*, 54 So. 3d 203, 205 (¶6) (Miss. 2011) ("An insurance policy is a contract with an insurance company, whose duty to pay claims ordinarily is contractual").

¶17.    Accordingly, the law has generally held that the proceeds of an insurance policy are not impacted by ownership of land but solely governed by the language of the contract. "This court is committed to the doctrine that fire insurance is an indemnity to the insured and

the proceeds thereof do not run with the land." *King v. King*, 163 Miss. 584, 143 So. 422, 424 (1932); *Necaise v. U.S.A.A. Cas. Co.*, 644 So. 2d 253, 257 (Miss. 1992) (quoting *King* with approval).

¶18.   As the Court concluded in *Necaise*, "[t]he company's duty is to pay benefits to the party with whom it contracted." *Id.* at 257.   This holds so long as the insured has an insurable interest, and "[a]ll that is required for one to have an insurable interest in property is that the insured will suffer an economic loss if the property is destroyed." *Id.* at 258.

¶19.   The general rule is illustrated by a case fairly like the one at hand.   A widow and her "four adult children" lived on property owned by her deceased husband, which included "a house and lot which constituted his homestead, and certain furniture and household effects." *Collette v. Long*, 179 Miss. 650, 176 So. 528, 528 (1937).   "She procured an insurance policy . . . on the house and the furniture therein, against all direct loss and damage by windstorm, cyclone, and tornado," and at some subsequent point, "the property insured was destroyed and the widow was killed by a tornado." *Id*.

¶20.   The administrator of her estate requested payment from the insurance company, but it declined. *Id*.   The widow's children claimed the money belonged to them as owners of the property and should not be paid to her estate. *Id*.   So the insurer had the money put into the registry of the trial court pending adjudication of the same question presented in today's case—"for the purpose of determining to whom the money belongs." *Id*.

¶21.   The Lee County Chancery Court found the money belonged to the widow's estate. *Id*.   The children appealed, claiming that because they "were cotenants of this property, each

having an undivided one-fifth interest therein," the "policy of insurance inured to the benefit of all of the cotenants." *Id*. at 529.

¶22. The Supreme Court rejected the claim by the children, focusing instead on the general rule that the proceeds from the contract would be governed by the insurance policy. *Id*. "In their very nature, policies of insurance are not incidents of the property." *Id*. (quoting *Bernheim v. Beer*, 56 Miss. 149, 153 (1878)). "They are contracts between insurers and assured for indemnity of the assured, and not for loss or damages which another person may have sustained because of the destruction of the property, no matter what the interest of that person may be, as mortgagee, creditor, or otherwise." *Id*. In the end, the Court determined that "[i]f another person has an interest in the property, he may insure for himself." *Id*.

### *The Specific Rule of Insurance and the Property Rights of Co-tenants*

¶23. But there is an exception to this general rule where the law has evolved to accommodate others for whom the insurance benefits. In situations where equity requires it, a co-tenant or third party may be allowed to receive insurance benefits even when not listed on an insurance policy. This has been allowed when "one securing insurance for the benefit of the other insurable interests in property holds the proceeds in trust for those interests." *Sullivan v. Est. of Eason*, 558 So. 2d 830, 833 (Miss. 1990). In other words, an insurance policy might be found to benefit all co-tenants if there is proof this was intended when procuring the policy or if equity requires it given the circumstances. *Id*.

¶24. In *Sullivan*, five children were born to the Easons, who owned a home and property in Smith County. *Id*. at 831. Both parents died intestate, and the property passed to the

7

children. *Id*. One child had the parents' home insured. *Id*. While she only had a one-fifth interest in the home, the policy was made solely in the name of her and her husband. *Id*.

¶25. Just as in this case, "the residence and contents [were] totally destroyed by fire." *Id*. Unlike this case, the insurer did not then issue a check to the policyholders but, instead, "to all of the heirs at law" of another one of the children, "the last survivor of the parents, for the damage caused by the fire." *Id*. The policyholders objected to the disbursement of the funds, with the conflict focusing on "whether the insurance purchased and the premiums paid were for the benefit of all co-tenants." *Id*. at 832.

¶26. Unlike this case, in *Sullivan* testimony showed that one of the other daughters paid "the first quarterly insurance premium" not from her own funds but from "a telephone refund check" that had been issued to her mother, and the administratrix of the parents' estate "testified th[e] [daughter who obtained the policy] had made representations to the other siblings that the insurance coverage would be for the benefit of all of them and that she had detrimentally relied on these representations." *Id*. Two other witnesses, including the policyholder's niece, testified that "the insurance proceeds were to be divided equally among the children." *Id*.

¶27. While the daughter who obtained the policy denied the insurance was for the other children, "the trial court ruled that the insurance was procured for the benefit of all heirs-at-law by Barbara Sullivan and that the proceeds should be shared by all co-tenants." *Id*.

¶28. On appeal, the Supreme Court first acknowledged the general rule "that insurance is

8

a personal contract of indemnity to protect the insured." *Id*. at 833. But there could be an exception, recognized in other jurisdictions, when "one securing insurance for the benefit of the other insurable interests in property holds the proceeds in trust for those interests." *Id*.

¶29. While not expressly adopting a test as to when this exception would be applied, the Supreme Court noted, "[O]ther courts have used the following test in deciding whether a party who holds less than a full interest in a piece of property is entitled to the entire insurance proceeds or whether such proceeds must be shared:"

> (1) [W]hether the insurance was obtained for the sole benefit of the person who procured it; (2) whether by express or implied agreement the person who took out the insurance did so for the benefit of the owners of the other interests in the property; and (3) whether the owners of the other interests contributed to the cost of the insurance.

*Id*. at 833-34. After reviewing the proof from the trial, the Supreme Court concluded the other children had indeed established they should recover under the insurance policy even though they were not listed as beneficiaries. *Id*.

¶30. The factors from *Sullivan* have subsequently been used to determine if a third party should be allowed to recover insurance proceeds even when not listed as a policyholder or beneficiary. *See Necaise*, 644 So. 2d at 256 (finding a non-party was not entitled to benefits due to lack of proof on the factors); *In re Holyfield*, No. 08-10735-JDW, 2015 WL 4458885, at *12 (Bankr. N.D. Miss. July 20, 2015) (applying *Sullivan* and finding former renters of a mobile home had no right to insurance proceeds when no proof showed the policy was meant to benefit them and they "did not pay any of the cost of the premium").

¶31. In the court below, Simpson claimed he was entitled to recover for the loss of the

9

burned home even though he was not on the policy and never paid for it. As such, he bore the burden of proof. *See Sullivan*, 558 So. 2d at 834 (explaining "these questions were to be determined from the evidence presented at trial and the circumstances of the parties").

¶32.   But instead of calling witnesses at a trial, Simpson rested on the purely legal theory that the policy's benefits automatically shifted to him upon Ms. Raley's death by virtue of his interest in the property as a joint tenant with the right of survivorship. Yet as set out above, the insurance contract did not list him as a beneficiary, and he did not provide proof that he helped pay the premiums on the policy or that it was secured to protect his interest as a joint tenant.

¶33.   So when the trial court applied the specific rule from *Sullivan*, which allows a co-tenant like Simpson to recover, the court found that "all three factors . . . favor the estate." "No evidence was presented to indicate that Kenneth had an ownership interest" in his cousin's home "or paid any of the insurance premiums," and "the policy was taken out solely in Barbara's name." Critically, the trial court held that if the "home burned prior to her death, the Court does not believe that Kenneth could have claimed any of the insurance proceeds."

¶34.   Given the utter lack of proof, we cannot say the trial court committed manifest error warranting reversal under our standard of review; "rather, the record supports such a finding" that Simpson was not entitled to the proceeds. *Id.*

¶35.   Simpson attempts to sidestep this binding law by focusing on novel legal theories not based on the above precedent. In his first assignment of error, Simpson claims that the

10

*Sullivan* test "is **not** relevant" (emphasis his), focusing on his idea that "the brothers and heirs . . . have no partial ownership and insurable interest in the real estate and home at issue herein as of the date of the Deceased's death[.]"

¶36. This misses the mark. It is true the descendants of Ms. Raley have no interest in the real property, as it passed to Simpson upon her death by virtue of his status as a joint tenant with a right of survivorship, but the trial court did not make that ruling. Instead, the trial court ruled that the descendants are allowed to recover from the policy that only benefitted Ms. Raley, which she alone contracted for, and she alone paid for. This is standard insurance law. Further, *Sullivan* indeed applies in cases of this type, as it is the only route that a non-party to the insurance contract may take to recover when the sole basis of the claim to policy proceeds is co-tenancy.[2]

¶37. As a corollary to this assignment of error, Simpson claims that if we apply *Sullivan*, as the trial court did, we violate the rule against parol evidence. Yet this ignores precedent. *Sullivan* itself reckoned with this argument but held fast to "the general rule that the parol evidence rule applies only to controversies between parties to the agreement." *Sullivan*, 558 So. 2d at 832. In cases of this type, "the insurance company is not a party," so the rule against parol evidence is not applied when interpreting who benefits under a contract. *Id*.

¶38. As his second issue, Simpson argues that upon the death of his cousin, "the real

---

[2] Furthermore, as well explained by the separate opinion, analogous authority has precluded a third party from raising this argument in actions regarding life insurance. The Mississippi Supreme Court has held "as a general proposition, . . . only the insurance company which issued the life insurance policy can raise the issue of insurable interest," unless "allegations of fraud or deception" regarding the procurement of the policy are made. *Cundiff v. Cain*, 707 So. 2d 187, 190 (¶7) (Miss. 1998).

11

property and home of the deceased became [his] whole property in fee simple," so any recovery should be his alone. Per statute, Simpson did indeed gain the full interest in the property upon his cousin's death, as they held the property as joint tenants with rights of survivorship. *See Jones*, 95 So. 3d at 753 ("The decedent's share does not have to pass to the survivor because the survivor already owns the whole").

¶39. But Simpson ignores that the only way one can recover for this fire loss is through insurance and that the insurance was only in the name of his cousin, the policyholder. He does not cite any law in support of his theory that his interest in the real property automatically converted him into a beneficiary under the policy, nor does he try to distinguish the ample caselaw to the contrary.

¶40. Third, Simpson protests that it would be inequitable for the brothers of Ms. Raley to receive the insurance proceeds, arguing that this "would constitute unjust enrichment." Yet to do equity is to do what is fair. In *Necaise*, the Supreme Court concluded that when an insurance policy was purchased by a husband's second wife "with her own funds," and the ex-wife "did not pay any of the costs of the insurance," then "[t]o allow her to collect on this policy would be to grant her an absolute windfall." *Necaise*, 644 So. 2d at 257.

¶41. The same would be true in this case. The record shows that only Ms. Raley bought the insurance policy using her own money, and it was limited to the modest value of her home and its contents; the contract was to benefit her and her alone. In 1932, the Supreme Court ruled that "[t]he right of contract is a public policy in this state." *King*, 143 So. at 424. In doing so, the court soundly rejected a challenge like Simpson's when a remainderman

12

sought to recover under an insurance policy secured by a life tenant. *Id.* When a person with a property interest "fail[s] to exercise his right to insure his interest in the property[, there] is no reason for permitting him to claim an interest in the independent contract between the life tenant and the insurance company, no[r] can the courts invade it." *Id.* Therefore, based on this precedent, we find that it was not unjust for Ms. Raley's heirs to recover under the fire hazard policy.

¶42. Last, Simpson makes the argument that he "can find no provision in common law that makes a hazard insurance contract survivable beyond the life of the contracting party" and turns to statutes to argue there is some kind of grace period that benefits him. This again ignores key legal rulings cited above from the years 1937, 1990, and 1992—all of which involved hazard insurance that clearly survived the death of the insured.

¶43. Finding no manifest error, the Calhoun County Chancery Court's decision is **AFFIRMED**.

**BARNES, C.J., CARLTON, P.J., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, SMITH AND EMFINGER, JJ., CONCUR. WILSON, P.J., CONCURS IN PART AND IN THE RESULT WITH SEPARATE WRITTEN OPINION, JOINED IN PART BY McDONALD AND McCARTY, JJ.**

**WILSON, P.J., CONCURRING IN PART AND IN RESULT:**

¶44. I concur that the judgment of the chancery court should be affirmed. I write separately to address Simpson's argument that Raley's heirs were not entitled to the insurance proceeds for the loss of Raley's former home[3] because the heirs had no insurable interest in the home

---

[3] The chancery court's judgment stated that Raley's home was a "mobile home." However, the subject insurance policy described it as a "frame home," and Raley's estate admitted that it was a "frame home," "not a mobile home." There is no evidence in the

following Raley's death. For the reasons discussed below, Simpson is correct that the heirs had no insurable interest in the home; however, Simpson lacks standing to raise that issue.

¶45. Raley and Simpson held the subject property as joint tenants with rights of survivorship. Therefore, Raley's interest in the property did *not* pass to her heirs. *Jones v. Graphia*, 95 So. 3d 751, 754 (¶7) (Miss. Ct. App. 2012). Rather, "*at the moment of* [*Raley's*] *death*, ownership [of the real property] vest[ed] exclusively in [Simpson as] the surviving joint tenant." *Seymour v. Turner*, 228 So. 3d 343, 346 (¶9) (Miss. Ct. App. 2017) (emphasis added) (quoting *Jackson v. Est. of Green*, 771 N.W.2d 675, 677 (Mich. 2009)). Accordingly, Raley's heirs *never* possessed any ownership interest in the real property or home.

¶46. "Mississippi follows the general rule that in order to be entitled to proceeds from an insurance policy, the purchaser of the policy must have an insurable interest in the property . . . insured." *Aetna Cas. & Sur. Co. v. Davidson*, 715 F. Supp. 775, 776 (S.D. Miss. 1989) (Lee, J.). "All that is required for one to have an insurable interest in property is that the insured will suffer an economic loss if the property is destroyed." *Necaise v. U.S.A.A. Cas. Co.*, 644 So. 2d 253, 258 (Miss. 1992). However, "Mississippi law requires a purchaser of property insurance to have an insurable interest in the subject property at the time of purchase *and at the time of loss*."[4]

---

record that the home was a mobile home.

[4] *Nationwide Mut. Ins. v. Baptist*, No. 2:12-CV-00097-SA-JMV, 2013 WL 4829262, at *2 (N.D. Miss. Sept. 10, 2013) (Aycock, J.) (emphasis added), *aff'd*, 762 F.3d 447 (5th Cir. 2014); *accord, e.g.*, *Breeden v. Buchanan*, 164 So. 3d 1057, 1070-71 (¶¶64-66) (Miss. Ct. App. 2015), *cert. denied*, 160 So. 3d 704 (Miss. 2015); *Ferrara Land Mgmt. Miss. LLC v. Landmark Am. Ins.*, No. 1:19-CV-956-HSO-JCG, 2021 WL 5053526, at *5 (S.D. Miss. July 7, 2021) (Ozerden, J.); *Landmark Am. Ins. v. Gatchell*, No. 2:11-CV-189-KS-MTP,

¶47. Simpson argues that Raley's heirs are not entitled to receive insurance proceeds for the loss of the subject home[5] because the heirs never possessed any insurable interest in the real property or the home. I agree with Simpson that the heirs had no insurable interest in the home. As explained above, Raley's entire interest in the real property vested *exclusively* in Simpson *immediately* upon Raley's death. Therefore, the heirs had no interest in the property to insure.

¶48. However, as a general rule, the objection that a claimant lacks an "insurable interest" "is available only to the insurer, and not to other parties." *Neely v. Pigford*, 181 Miss. 306, 314, 178 So. 913, 914 (1938). When the insurer "recognizes the validity of the policy, as by paying the amount thereof to the person named therein or into court, ordinarily adverse claimants to the fund may not raise the objection of lack of insurable interest." *Cundiff v. Cain*, 707 So. 2d 187, 190 (¶7) (Miss. 1998) (quoting 44 C.J.S. *Insurance* § 244 (1993)).

---

2015 WL 1806843, at *2 (S.D. Miss. Apr. 21, 2015) (Starrett, J.); *Rentrop v. Trustmark Nat'l Bank*, No. 1:07-CV-0384-LTS-RHW, 2008 WL 4371375, at *2 (S.D. Miss. Sept. 18, 2008) (Senter, J.); *State Farm Fire & Cas. Co. v. Ramsey*, 719 F. Supp. 1337, 1339-41 (S.D. Miss. 1989) (Lee, J.); *see also Gen. Star Indem. Co. v. Pike Cnty. Nat'l Bank*, 706 So. 2d 227, 230 (¶14) (Miss. 1997) (holding that the insured had "an insurable interest in the property" because it "acquired record title . . . and had record title at the time of the loss"); *Camden Fire Ins. Ass'n v. Koch*, 216 Miss. 576, 583, 63 So. 2d 103, 105 (1953) (stating that the named insured could not recover under her policy because she lacked "an insurable interest in the property at the time of the loss"); *Est. of Murrell v. Quin*, 454 So. 2d 437, 444 (Miss. 1984) (Prather, J., dissenting) ("[C]ase law has recognized in fire insurance cases that an insured must not only have an insurable interest at the time of inception of the policy, but also at the time of loss claimed under the policy."); Jeffrey Jackson & D. Jason Childress, *Mississippi Insurance Law and Practice* § 4:13, at 119 (2023 ed.) ("An insurable interest in property must exist at the time of the loss.").

[5] Simpson concedes that Raley's heirs are entitled to retain the proceeds paid for the contents (i.e., personal property) destroyed in the fire.

Our Supreme Court has recognized one exception to this rule, holding that when "there have been allegations of fraud or deception" related to the issuance of a life insurance policy, the estate of the insured "should have standing to recover the benefits paid to some other beneficiary." *Id.* However, that exception is inapplicable here, as there are no allegations of fraud or deception related to Raley's property insurance policy. In this case, the insurer recognized the validity of the policy by making payment to Raley's estate.[6] *Id.* Therefore, Simpson lacks standing to seek to recover the proceeds based on the heirs' lack of an insurable interest. *Id.*

¶49. Simpson fails to identify any other legal or equitable basis for requiring Raley's estate to pay the subject insurance proceeds to him. As the majority explains, Simpson is not a named beneficiary under the policy, he presented no evidence that Raley intended or agreed to obtain the policy for his benefit, and he did not contribute to the cost of the policy. *See Sullivan v. Est. of Eason*, 558 So. 2d 830, 834 (Miss. 1990). As for Simpson's claim of "unjust enrichment," our Supreme Court has emphasized that "[t]here is nothing inherently unjust about enrichment. The principle does not proscribe mere enrichments, only those objectively seen as unjust." *Omnibank of Mantee v. United S. Bank*, 607 So. 2d 76, 92 (Miss. 1992). In this case, each side makes a reasonable argument as to why each should receive the subject proceeds. Raley's estate emphasizes that Raley paid the premiums for the subject policy, but the estate must acknowledge that Raley's interest in the house did not pass to her

---

[6] At a hearing in the chancery court, counsel for Raley's estate represented that the insurer had issued a check payable to Raley's estate, which counsel had deposited in his trust account. Simpson does not dispute this representation.

heirs.  In contrast, Simpson emphasizes that he was the house's only owner when it burned—that he, not Raley's estate, actually suffered the loss of the house.  But Simpson paid nothing for the policy and offered no proof that he was an intended beneficiary of it.  Under these circumstances, reasonable minds may differ as to what would be a fair result, but it does not rise to the level of "objectively . . . unjust" for Raley's estate to receive the proceeds of Raley's insurance policy.  *Id.*

¶50.    In summary, Simpson lacks standing to raise the issue of a lack of an insurable interest in the subject home, and he failed to establish any other legal or equitable right to the subject proceeds.  For those reasons, I concur that the judgment of the chancery court should be affirmed.

**McDONALD AND McCARTY, JJ., JOIN THIS OPINION IN PART.**