DEAN *v.* SIMPSON, et al.

No. 40885 February 2, 1959 108 So. 2d 546

*Amy Burkett,* Ocean Springs, for appellant, Mrs. Guy Dean.

*Thomas L. Wallace,* Biloxi, for appellants, Lillian Carson Saville, Harvey Carson, Jr., and Earl Carson, Jr.

*L. C. Corban,* Biloxi; *Satterfield, Shell, Williams & Buford,* Jackson, for appellees.

ROBERDS, P. J.

This proceeding involves the determination of the title to a tract of land, described in the bill, located in Jackson County, Mississippi. The question arises under these circumstances:

Mrs. Guy Dean (Mrs. Lena Carson Dean) filed the original bill herein. A general demurrer was sustained to that bill. An amended bill was filed by Mrs. Dean. A motion to strike this amended bill was sustained. This motion, in effect, was a general demurrer. The question is whether or not the amended bill states a cause of action.

The amended bill discloses these facts and circumstances: On and before June 21, 1926, Charles I. Simpson was the owner of the land. On that day he and his wife Elizabeth Carson Simpson executed a deed of trust on the land to J. W. Apperson to secure payment of the sum of $5,000, which was evidenced by a promissory note, due five years from the date thereof. On April 22, 1933, Apperson assigned and transferred the note and trust deed to the First National Bank of Biloxi, Mississippi.

In April 1935, said Bank filed a bill in the Chancery Court of Jackson County to foreclose this trust deed in equity. Personal service of process was had upon Apperson, and Charles I. Simpson and his wife Elizabeth Carson Simpson. The court entered a personal decree against said three parties for the sum of $5,840, and appointed a commissioner to sell the land if the debt should not be paid within ten days. The debt was not paid. The commissioner proceeded to make due sale of the land, and it was purchased by the Bank for a recited consideration of $3,000. The sale was duly confirmed. The commissioner executed his deed to the Bank. August 29, 1935.

The amended bill avers that the Bank did not take possession of the property, but, on the other hand "left" Charles I. Simpson and his wife in the possession thereof. Charles I. Simpson departed this life October 13, 1935, according to the amended bill, although it is asserted in some of the other pleadings that he died in November 1935. It is averred that "shortly after the death" of Charles I. Simpson, his wife, Elizabeth Carson Simpson, left the premises and removed to the State of Texas; that she remained there some two years, having returned to the old home for a two week's visit with Miss Marie Simpson, who continued to reside on the premises constituting the subject of this lawsuit. Mrs. Elizabeth Carson Simpson died July 25, 1939.

On March 25, 1936, the First National Bank of Biloxi executed to Miss Marie Simpson a warranty deed to the land, reciting a consideration of ten dollars and other good and valuable considerations "in hand paid." The bill avers the actual consideration was the amount of the debt to the Bank, plus interest and costs. The deed from the Bank just mentioned did not have the seal of the Bank thereon. To correct that omission the Bank executed to Miss Marie Simpson another deed to the

land, dated May 15, 1947, to which the Bank duly attached its corporate seal.

On April 19, 1951, Miss Marie Simpson executed to Elvas V. Shove and wife Grace Shove a deed conveying a small part of the land here in controversy.

Miss Marie Simpson continued to occupy and use the premises, after her purchase thereof, until her death sometime after this appeal was taken.

The amended bill avers that since the filing of the original bill, an holographic will of Charles I. Simpson has been found, a copy of which being exhibited to the amended bill. We will refer to this later.

The asserted interest of the parties in this land results from these circumstances:

The lands belonged to Charles I. Simpson. He married twice. Marie Simpson was a child of the first marriage and his nearest blood kin. She was his only child. His second marriage was to Elizabeth Carson. Charles and Elizabeth had no children. But Mrs. Elizabeth Carson Simpson, when this litigation started, had three living children, to-wit: Mrs. Lizzie (Lena) Carson Dean, same person as Mrs. Guy Dean; Mrs. Lillian Carson Saville; Mrs. Lula Carson Chinn—and she had two nephews, Harvey Carson, Jr., and Earl Carson, Jr., sons of deceased brothers of Mrs. Lena Carson Dean (Mrs. Guy Dean). So that, on the death of Mr. Charles I. Simpson, his heirs-at-law were his wife, Mrs. Elizabeth Carson Simpson, and his daughter Marie Simpson, each entitled to inherit one-half of what he might own at his death. The heirs of Mrs. Elizabeth Carson Simpson, who died after her husband Charles I. Simpson, were the three daughters and two nephews above-mentioned. Mrs. Dean, as sole complainant, filed the bills herein. She made defendants thereto Miss Marie Simpson, Mrs. Saville, Mrs. Chinn, Harvey and Earl Carson, and Elvas Shove and his wife Grace Shove, who, as stated, had purchased some of the land from Miss Marie Simpson. She

asserted that on the death of Charles I. Simpson in October or November 1935, his heirs were Marie Simpson, his daughter, and Elizabeth Carson Simpson, his wife, each inheriting one-half of what he might own, and that on the death of Elizabeth Carson Simpson, July 29, 1939, her heirs being her three daughters and two nephews, as above stated, each inheriting a one-fifth of her estate.

 █ The main contention of Mrs. Dean, her sisters and nephews, is that when Miss Marie Simpson purchased the property from the Bank she was a cotenant in the lands with her father, and the purchase was for the benefit of both of them, and half of the father's right had descended to and become invested in Mrs. Dean and her two sisters and two nephews.

In the equity foreclosure proceeding all interested parties were in court by appearance or process.

We are unable to discern the relation of tenancy in common between Miss Marie Simpson and Charles I. Simpson when Miss Simpson bought the land from the Bank March 25, 1936. All interest of Charles I. Simpson in this land had been divested out of him by the commissioner's sale. He and his wife had given a deed of trust on the land in 1926. That deed of trust ran almost ten years. The debt kept increasing. The Bank, after due and legal notice, foreclosed the trust deed through equity, and the Bank was the purchaser at that sale. No attack is made upon the validity of that sale. It is not claimed that the land did not bring a fair price, nor that the sale was in any manner irregular, nor that there was any fraud in the transaction. The Bank is not a party to this proceeding. No attempt is being made to set that deed aside. Summed up, the Bank had the title and there could be no tenancy in common between Miss Marie Simpson and Charles I. Simpson in lands owned by another party. It is not claimed that Miss Marie Simpson purchased the land for herself and Mrs. Elizabeth Carson Simpson. The amended bill complains that she did

not do that. In 86 C. J. S., Tenancy in Common, p. 429 (3), this rule is announced: "Where a cotenancy has been extinguished by a judicial sale of the property, the rule precluding a cotenant from acquiring a title to the common property for his own benefit does not apply in the absence of fraud or agreement to acquire it for the common benefit." The facts of this case, as averred in the amended bill, bring it within this rule deduced in the syllabi to Smith, et al. v. Smith, et al., 211 Miss. 481, 52 So. 2d 1: "Where the owner of two adjoining tracts of land mortgaged one of them only and after the owner had died intestate, the mortgage was foreclosed, a deed, several months later, of the mortgaged tract by the foreclosure purchaser to a son of the former owner, for himself alone and for value paid and in good faith, conveyed a good title to the son and to his subsequent grantee and a contention that the purchase by him was merely redemption for the benefit of himself and his cotenants by inheritance from his intestate father was not well taken * * *" See also Griggs, et al. v. Griggs, et al., 67 So. 2d 450, 218 Miss. 433, where it is said: "Mere kinship, or descent from the common ancestor who had been completely divested of title to the property during her lifetime, did not create such a confidential or fiduciary relationship as would preclude A. M. Griggs from purchasing the tax title."

 Mrs. Dean and her kindred speak of the right of equity of redemption under the trust deed. We are not aware of any right of equity of redemption in this State after the mortgaged land has been sold and purchased. Miss Simpson had no title to, or interest in, the land before she bought it. She had no right of equity of redemption from the commissioner's sale to the Bank. Whatever right existed in anyone to pay the mortgage debt and free the land of the lien was extinguished by the sale under the lien against the land. The doctrine that purchase by one cotenant inures to the benefit of

other cotenants has no application to the facts of this case.

■■■ The amended bill avers that after the commissioner's sale to the Bank if it permitted Charles I. Simpson to remain on the land until his death about two months later, creating some kind of a tenancy relation between himself and the Bank, which, on his death, inured to the benefit of Miss Marie Simpson and Elizabeth Carson Simpson, and which brought about some type of cotenancy relation between Marie Simpson and Mrs. Simpson. The relation created between the Bank and its permission for Mr. Charles I. Simpson to remain on the land was either that of tenancy at sufferance or at will. ■■■ Such an estate, whichever it may be, is not inheritable. Death of tenant terminates both estates. Thompson on Real Property, Vol. 3, p. 56, Section 1048; 32 Am. Jur., Landlord and Tenant, Section 75, p. 89; Thompson on Real Property, Vol. 3 (Perm. Ed., Section 1029); and 32 Am. Jur., Landlord and Tenant, Section 67. Whatever estate Charles I. Simpson had, after the Bank purchased the land, terminated at his death.

There is exhibited to the amended bill what purports to be a will of Charles I. Simpson. It has never been probated and therefore is not established as the legal last will and testament of Charles I. Simpson. But, even though it had been probated and established, it would not have aided the cause of Mrs. Dean, complainant, and her kinsmen. The instrument is dated April 21, 1929, after execution of the deed of trust to Apperson. One provision of it reads ''First all mortgaged property must be cleared by satisfying amount encumbering such property'', apparently referring to the Apperson trust deed. The balance of his property, after payment of debts, he divided between his wife and daughter to a stated amount, the balance over the named amount, to be given charitable institutions. We do not try to interpret the will. That is not necessary. Reference to the existing Ap-

person trust deed seems the most relevant provision as applied to the issues here involved. The will has no particular bearing on the issues involved in this litigation.

██ Finally, the amended bill avers that Miss Marie Simpson sat "idly" by while the foreclosure was taking place, intending to buy the property later. In the nature of the case, this statement is largely a conclusion. The other allegations of the bill, with the exhibits, largely disprove the charge. Regardless of the intent of Miss Simpson, the Bank could have sold the property to anyone it desired. It kept the property about eight months. Even though Miss Simpson intended to get title to the property, this intent alone would not constitute actionable fraud. The title to the property was in the Bank and no one had any preferential right to buy it from the Bank. That institution could have sold it or kept it.

Some other questions are raised on the merits. We have considered them and find them not well taken. The amended bill did not state a cause of action. The motion to strike it was properly sustained.

It is pertinent to note that all parties to this litigation are adults and that this bill was filed some twelve years after the death of Mrs. Elizabeth Carson Simpson, through whom Mrs. Dean and her kinsmen inherit whatever interest they have in the subject lands. ██ We have also been confronted with the rule that the allegations in the pleadings must be construed most strongly against the pleader.

At the outset, the question of whether Mrs. Dean and her kinsmen had perfected this appeal to this Court was raised. The cross bills against appellants were pending until the decree of June 18, 1957. The appeal of Mrs. Dean was perfected within the time and manner required by law and the other parties were brought into this Court by citation in response to her appeal. Miss. Chancery Practice, Griffith, 2d Ed., Section 609.

Affirmed.

*Hall, Arrington, Ethridge* and *Gillespie, JJ.,* concur.