**Lamar JOHNSON, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. DC88–158–S–O.

United States District Court, N.D. Mississippi, Delta Division.

April 15, 1992.

Ronald Musgrove, Batesville, Miss., for plaintiff.

Robert Q. Whitwell, U.S. Atty., Patricia Rogers, Asst. U.S. Atty., Oxford, Miss., Jerry Robertson, District Counsel, FmHA, Jackson, Miss., for defendant.

## OPINION

SENTER, Chief Judge.

On August 10, 1989, this court entered an opinion and order granting in part and denying in part defendant's motion to dismiss. Specifically, this court dismissed plaintiff's claims (1) against the Agricultural Stabilization and Conservation Service (ASCS), and (2) against Farmers Home Administration (FmHA) concerning plaintiff's alleged right to repurchase certain farmland which he had once owned. However, the court refused to dismiss plaintiff's claim for a declaratory judgment that he had a right to possession of that land in 1987, which was a prerequisite to plaintiff's receiving the remainder of an ASCS deficiency payment. The parties agreed to submit this remaining question to the court on stipulated facts and legal memoranda. Having considered all of the pertinent documents and the legal arguments, the court is now in a position to render its decision.

## STIPULATED FACTS

In 1985, the plaintiff, Lamar Johnson, filed Chapter 11 bankruptcy, listing FmHA as a creditor. At the time, Johnson owed FmHA approximately $900,000.00. Despite the institution of the bankruptcy proceedings, Johnson continued to cultivate his farm throughout 1985.

After Federal Land Bank foreclosed Johnson's farm, FmHA purchased it in early 1986. Johnson nevertheless continued to farm this land throughout the remainder of that year. FmHA, upon learning of this, filed a complaint to impress a lien as a landlord in the bankruptcy proceeding. FmHA was successful on this complaint and received landlord rent from Johnson for 1986. Eventually, Johnson converted to Chapter 7 bankruptcy and was discharged in March, 1987.

In August, 1986, Thomas Whitehead, the county supervisor of FmHA for Panola County, advised the Panola County ASCS office that FmHA was the titled owner of the farmland previously owned by Johnson and that "the property is not presently under lease to anyone...."

In February, 1987, Johnson applied to FmHA for a production loan. Although the county committee approved the application, Whitehead denied Johnson's loan re-

quest. Johnson appealed this decision.[1] The hearing officer upheld the loan denial. Throughout these proceedings, FmHA was aware of and knew that Johnson was preparing the ground for planting and that he was indeed farming the subject land once again.[2]

In August, 1987, Paul Savage, the county supervisor of FmHA for Panola County, notified the Panola County ASCS office that "Lamar Johnson is currently operating the farm that FmHA has in inventory." The next month, ASCS disbursed to Johnson a partial deficiency payment of $14,996.68 for the 1987 crop year.

In November, 1987, Henry Mangum, on behalf of the state director of FmHA, wrote a letter to Charles Hull, the acting state executive director of ASCS, informing him that "[n]either a verbal nor written lease was entered into between Farmers Home Administration and Gaston L. Johnson for crop year 1986 or 1987. Please be advised that by virtue of MS Code Ann. 89-7-51(1) (Supp.1986) FMHA will have a landlord's lien on crop proceeds for crops grown on this property in 1987."

ASCS office regulations provide in part that in order for it to release any ASCS proceeds, there must be a statement from FmHA that one of the following exists between FmHA as owner/operator and a producer:

(A) A written or oral lease exists between the producer and the FMHA; or

(B) The producer has a permit; or

(C) The producer has some other evidence of a right to possession.

## DISCUSSION

■ The precise question presented for this court's determination is whether Johnson had any right, contractual or otherwise, during 1987, to possess the farmland in question which was formerly owned by him and is now owned by FmHA. Both parties acknowledge that the resolution of this issue hinges not on whether there was a permit but rather on whether Johnson had some kind of lease with FmHA or some other right to possess the land in question.

Defendant vehemently denies the existence of any kind of landlord/tenant relationship between FmHA and Johnson. However, it cannot be disputed (1) that FmHA officials, on both the state and regional levels, knew that Johnson was in possession of the land in 1986 and 1987 although FmHA was the titled owner of the Johnson farm and that no written lease was in effect between the two parties; (2) that FmHA never, during this time period, attempted to evict Johnson from the property (and, in fact, no FmHA official ever suggested eviction as a possible course of action) even though, under its own regulations, it could have done so, see 7 C.F.R. § 1955.61 (1987) ("Advice and assistance will be obtained from OGC [Office of General Counsel] when eviction from realty ... is necessary.... If no written lease exists, the State Director will obtain advice from OGC"); and (3) that FmHA, through the bankruptcy proceedings, sought to enforce a statutory *landlord* lien and succeeded in procuring rent for 1986 and that it later recognized its statutory right to collect landlord rent for 1987. *See* Miss. Code Ann. § 89-7-5 (provides "landlord" with means for obtaining rent for "use and occupation of the lands held and enjoyed by another" "where there is no contract or where the agreement is not in writing").

1. Although the stipulated facts do not directly address the matter of the appeal, the parties attached to their stipulation of facts a copy of the transcript of the informal appeal proceedings. At the hearing, Johnson admitted that he had been unable to procure a lease or "rent contract" from FmHA for 1987. Whitehead explained that FmHA could not approve a rent contract until Johnson projected a cash flow on his application. The following exchange occurred between Johnson and Whitehead:

Johnson: Mr. Whitehead said that to just go ahead and work [the land] this year and try to work out the buying of the farm next year. Is that not right?

Whitehead: Due to the lateness of the application and proposal I felt it was the best route to go.

2. This is evidenced by Whitehead's acknowledgment at the hearing that he had taken photographs of Johnson's cotton crop which was being grown on the subject land.

In *Dean v. Simpson*, 235 Miss. 162, 108 So.2d 546 (1959), the Mississippi Supreme Court held that where the foreclosure sale purchaser permits the trust deed grantor to remain on the land which it has bought, the relationship between the two parties is that of a tenancy at sufferance or at will. *Dean*, 108 So.2d at 549. In a tenancy at sufferance, this permission to occupy the land may be established (1) by actual permission or (2) by implication from the circumstances surrounding the long-time use of the land with the owner's knowledge and the failure of the owner to object to the occupancy. *White v. Mississippi Power & Light Co.*, 196 So.2d 343, 349 (Miss.1967). *Cf. McKissack v. Bullington*, 37 Miss. 535 (1859) (contract to pay rent is not necessary to constitute landlord/tenant relationship).

Similarly, in this case, FmHA, after purchasing the subject property, permitted Johnson to remain on its land, thereby creating, by operation of law, a landlord/tenant relationship sufficient to give Johnson the right to possession of that land. It appears from the transcript of the appeals hearing that Whitehead did give Johnson explicit permission "to just go ahead and work [the land] this year...." *See supra* n. 1. Although Whitehead acquiesced in this characterization at the hearing, he now maintains that he was interpreting the word "work" "to mean to lease and farm the land." It is immaterial, though, whether any FmHA official verbally gave Johnson permission to occupy the land, for, based on the actions—and inactions—of FmHA, permission was nonetheless given.

Certainly, at any time during 1986 or 1987, FmHA could have sought Johnson's removal from the land. At that point (and assuming FmHA fully pursued its right to "dispossessory process," *see Sherrill v. Stewart*, 199 Miss. 216, 23 So.2d 915, 917 (1945)), he would have become a trespasser with no further right to possess the land. As noted, FmHA, for whatever reason, did not pursue this course at any time but instead allowed Johnson to remain in possession and farm the land. Despite its contention to the contrary, FmHA implicitly recognized the existence of the landlord/tenant relationship when it sought rent from Johnson in the bankruptcy court pursuant to Miss.Code Ann. § 89–7–5, which is expressly reserved for the use of a *landlord* who either does not have a lease with its tenant or has only a verbal lease. This is the precise scenario presented here.

In further support of its position "that Johnson never received nor was accorded the status that would allow him to farm the land in 1987," defendant submits a copy of an internal audit conducted by the Office of Inspector General (OIG).[3] This document, which is neither signed nor dated,[4] lists twenty-nine FmHA inventory properties in Missouri, Georgia, Louisiana, Iowa, Tennessee, and Mississippi which were farmed without leases. Included among these is the Johnson farm. The audit further revealed the amount of ASCS payments made to those who farmed FmHA inventory properties without leases, including Johnson. Specifically with regard to Johnson, the following statement appears:

> The FmHA county supervisor improperly signed a letter indicating this individual was farming the subject property although FmHA had not approved a lease or received any rental income. ASCS used this letter as a basis for approving ASCS payments in 1987. In 1986 FmHA received $16,290 in ASCS payments although no lease was in effect.

The audit also characterizes Johnson as a trespasser and notes that FmHA was aware of the alleged trespass.

As this document did not come into existence until long after the events surrounding this case transpired, defendant cannot argue that the audit or any comment in it played any role whatsoever in FmHA's course of dealings with Johnson. The decision to allow Johnson to remain on the land was made by several FmHA officials, all of

---

**3.** Although neither party identifies the exact identity of this OIG, the court assumes it is the one operating within the Department of Agriculture.

**4.** Defendant represents that the audit was conducted during 1989 and 1990, and Johnson does not dispute this.

whom knew of his continued presence on the land. The mere fact that these same officials couched their acknowledgment of his presence in terms of his not having a lease does not transform Johnson into a trespasser. They never treated him as a trespasser, nor did they label him as one. Further, that one FmHA official reported the facts as they existed, i.e., that Johnson was then operating this piece of inventory property, does not, despite the characterization of the OIG audit, appear to be "improper[ ]."

▄ Only one additional argument by defendant bears discussion: "If statements made by FmHA County Supervisors under the law otherwise would have created a contract between Defendant and Plaintiff, still, no contract could have been made expressly or by implication, for FmHA Supervisors cannot exceed their authority as vested by Government regulations." Although Johnson agrees that this is an accurate representation of the law, defendant garners no points with this argument for several reasons.

First, this court has found that the landlord/tenant relationship at issue here arose by operation of law, not through any specific contractual arrangement. Second, in order for its argument to be persuasive, defendant must show that the FmHA officials who monitored Johnson's case exceeded the scope of their authority and violated government regulations by allowing Johnson to remain on the land without the benefit of a written or oral lease. Defendant has not done this; rather, it has relied on general and vague allegations of wrongdoing without specific reference to any violated regulations. The court has itself perused the Code of Federal Regulations in search of these amorphous violations but cannot find any of them. Interestingly, though, the court did find the following:

§ 1955.65 Management of inventory and/or custodial real property

(a) *Authority*—(1) The County Supervisor ... will select the management method(s) used for property which se-

cures (or secured) loans to individuals....

\* \* \* \* \* \*

(b) *Management methods.* Management methods and requirements will vary depending on such things as the number of properties involved, their density of location, and market conditions.... In any case, the primary consideration in selecting the method of management to be used is to protect the Government's interest.

§ 1955.66 Lease of real property

When inventory real property ... cannot be sold promptly, or when custodial property is subject to lengthy liquidation proceedings, leasing may be used as a management tool when it is clearly in the best interest of the government.

7 C.F.R. §§ 1955.65 and 1955.66 (1987).

These sections indicate that county FmHA officials are vested with great discretion in how to manage inventory property and are not required to secure written leases on such property. Although formal contractual arrangement may have been the preferred course of dealing with those farming FmHA land, the court can find no regulation which mandates such a practice. Further, under the facts presented here, it does not appear that the decision to allow Johnson to remain on the land without a formal lease failed "to protect the Government's interest."

## CONCLUSION

This court therefore finds that the declaratory judgment should issue in favor of Johnson. The court declines, however, to set the amount of 1987 rent which FmHA should receive, although Johnson concedes FmHA's entitlement to rent for that year. No pleading was ever filed by either party in this case requesting that this court pursue this course. The parties are, of course, strongly urged to resolve this matter themselves; however, if resolution is not forthcoming, then defendant may, in the appro-

priate court, certainly pursue its statutory landlord lien as it did previously.